COGGINS v. O'BRIEN, Warden.

No. 4501.

United States Court of Appeals
First Circuit.

March 15, 1951.

Rehearing Denied March 29, 1951.

Michael F. Coggins, Jr., pro se.

Lenahan O'Connell, Asst. Atty. Gen. (Francis E. Kelly, Atty. Gen., Massachusetts, and William F. Marcella, Boston, Mass., on the brief), for appellee.

Wilbur G. Hollingsworth, Boston, Mass., amicus curiae.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and FORD, District Judge.

WOODBURY, Circuit Judge.

This is an appeal on certificate of probable cause, Title 28 U.S.C.A. § 2253, from a final order of the United States District Court for the District of Massachusetts dismissing an application for a writ of

habeas corpus without prejudice and denying the writ.

The petitioner and one Ralph P. Dupont were indicted and tried together on pleas of not guilty in the Massachusetts Superior Court for the County of Middlesex for a homicide committed in the course of an attempted armed robbery. Both were found guilty by the jury of murder in the second degree and both were sentenced to life imprisonment in conformity with Massachusetts law. Neither appealed and they were forthwith committed. At the trial, which took place in November, 1947, the petitioner was represented by counsel appointed by the court whose skill and competence is unquestioned.

Subsequently in June, and again in September, 1948, the petitioner acting *pro se,* filed separate motions for a new trial on the ground of after discovered evidence. These motions were heard by the judge who presided at the trial and both were denied without findings of fact, conclusions of law, or memorandum opinion. The petitioner appealed from the denial of both motions to the Supreme Judicial Court of Massachusetts and asked that Court to appoint counsel to assist him therein. He withdrew his request for counsel, however, when the counsel who had represented him at the trial volunteered to aid the petitioner in prosecuting his appeal, and in due course on July 21, 1949, the Supreme Judicial Court handed down its opinion affirming the Superior Court. Commonwealth v. Coggins, 324 Mass. 552, 87 N.E. 2d 200. The Supreme Court of the United States denied certiorari. 338 U.S. 881, 70 S.Ct. 152.

Thereupon the petitioner, again acting *pro se,* applied to the court below for a writ of habeas corpus alleging that his "trial, conviction, and sentence, individually or collectively, was rendered * * * in contravention of (his) Federal Constitutional Rights to 'Due Process of Law' as related and guaranteed * * * by virtue of the Fourteenth Amendment to the Constitution of the United States." As already appears the District Court dismissed the application and denied the writ, and

obtaining a certificate of probable cause from that court, the petitioner comes here on appeal.

On this appeal the petitioner filed a brief *pro se* and also asked us for a writ of habeas corpus *ad testificandum* to permit him to appear and argue in person. We denied his application for the writ, not because we doubted our power to issue it, but because in the exercise of our discretion we felt that oral argument by the petitioner himself was not reasonably necessary to our adequate understanding of the case. Price v. Johnston, 334 U.S. 266, 278–286, 68 S. Ct. 1049, 92 L.Ed. 1356. The petitioner also asked us to appoint counsel to aid him on this appeal and we did so. But the petitioner objected to representation by the counsel whom we had appointed asserting his incompetence in matters of federal constitutional law. We well knew that the petitioner's objection was utterly unfounded, and we did not deem it incumbent upon us to appoint some other attorney to represent the petitioner. Nevertheless, in view of the petitioner's objection, we changed the designation of the counsel we had appointed from counsel for the petitioner to *amicus curiae* so that we might have the benefit of his skill and learning at oral argument.

■ The petitioner's basic contention is that the prosecuting authorities knowingly used perjured testimony in order to bring about his conviction, and that this action on their part under the rule enunciated in Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, constituted a denial of that due process of law to which he is entitled under the Fourteenth Amendment of the Constitution of the United States. Undoubtedly if the petitioner's premise is sound, and his conviction did in fact rest upon perjured testimony knowingly used by the prosecuting authorities for that purpose, he has indeed been deprived of due process of law as guaranteed to him by the Fourteenth Amendment. But he has once tried to establish the factual basis upon which his constitutional contention rests in the courts of the Commonwealth of Massachusetts, and failed. This does not mean, however, that as a neces-

sary consequence he is forever barred from again trying to· establish the factual basis for his contention in the court below, for it was established in Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989, that the doctrine of *res judicata* is not applicable in habeas corpus cases. On the other hand it does not follow from the inapplicability of the doctrine of *res judicata* that in spite of his unsuccessful attempt in the Massachusetts courts he is entitled as of legal right, or without more appearing, even in judicial discretion, to try his basic factual issue over again in the court below. While state courts have full discretionary power either to hear again or summarily to dispose of repeated applications for habeas corpus grounded on the same facts filed by prisoners in state custody, and federal courts have like powers with respect to prisoners in federal custody, different considerations apply in cases like the present. Due respect for the delicacies of the relationship between the United States and its courts, and the states and theirs, under a federal system such as ours (see Darr v. Burford, 339 U.S. 200, 205 et seq., 70 S.Ct. 587, 94 L.Ed. 761, and cases cited) requires that the federal courts withhold their relief in state custody cases until it is made to appear that the state has not afforded a constitutionally adequate opportunity to prove the factual basis for a constitutional contention such as this unless "exceptional circumstances of peculiar urgency are shown to exist." United States ex rel. Kennedy v. Tyler, 269 U.S. 13, 17, 46 S.Ct. 1, 3, 70 L. Ed. 138; Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572. In my view the area of judicial discretion in cases like the present is limited to the evaluation of the urgency of any exceptional circumstances which may be present in a particular case. Thus, finding no "exceptional circumstances of peculiar urgency" whatever in the case at bar, the primary question for us as I see it is whether under Massachusetts law Coggins has been afforded an opportunity consonant with the due process requirements of the Fourteenth Amendment to prove that perjured testimony was in fact knowingly used by the prosecuting officials to obtain his conviction. For it is only aft-

er this question has been answered in the negative that the court below is open to him for a hearing on the merits.

At this point, however, I am confronted with two perplexing problems, arising from certain language used by the Supreme Court in recent cases.

The Supreme Judicial Court of Massachusetts did not rest its decision in Commonwealth v. Coggins, 324 Mass. 552, 87 N.E.2d 200, upon some nonfederal ground. On the contrary, taking it for granted that Massachusetts law provided Coggins with an adequate remedy by motion for a new trial, it held that Massachusetts practice and procedure had been fully complied with in the disposition of his motions for new trial, and that by that practice and procedure Coggins had not been deprived of any right secured to him by the due process provision of the Fourteenth Amendment. Thus the highest court of the Commonwealth never reached Coggins' basic federal constitutional question for the reason that in its view Coggins, although afforded due process of law, had failed to establish any foundation in fact for it to rest upon. That court did, however, consider a federal question, *i. e.*, the adequacy under the Fourteenth Amendment of the local system for administering the criminal law, and hence the Supreme Court of the United States had jurisdiction to grant Coggins' petition for a writ of certiorari directed to the Supreme Judicial Court of Massachusetts. The Supreme Court's denial of Coggins' petition for the writ under these circumstances presents the question of what weight if any, we should give that denial.

Raising this question does not indicate that I am unaware of the many occasions upon which the Supreme Court has emphasized that its denial of certiorari is not to be taken as a ruling upon the merits, or, indeed, even as having any bearing whatsoever upon the merits. I pose the question for the reason that the Supreme Court in House v. Mayo, 324 U.S. 42, 48, 65 S.Ct. 517, 521, 89 L.Ed. 739, while reaffirming the proposition that its denial of certiorari "imports no expression of opinion upon the merits of a case", nevertheless, closely paraphrasing Ex parte Hawk,

321 U.S. 114, 118,[1] 64 S.Ct. 448, 88 L.Ed. 572, (which it cites) goes on to say: "It is true that where a state court has considered and adjudicated the merits of a petitioner's contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated. * * * But that rule is inapplicable where, as here, the basis of the state court decision is that the particular remedy sought is not one allowed by state law, for in such a case this Court lacks jurisdiction to review the decision."

Moreover, the Court of Appeals for the Second Circuit in Schechtman v. Foster, 1949, 172 F.2d 339, 342, certiorari denied, Schectman v. Foster, 339 U.S. 924, 70 S.Ct. 613, interpreted the foregoing language as requiring it to give effect on the merits to a denial of certiorari by the Supreme Court in prior state proceedings. And the subsequent opinion of the court in Darr v. Burford, 339 U.S. 200, 214–216, 70 S.Ct. 587, 595–597, 94 L.Ed. 761, written by Mr. Justice Reed and concurred in by the Chief Justice and Mr. Justice Minton, handed down over a year after the Schechtman case, mentions but avoids decision of the question of the significance, if any, of a denial of certiorari to the highest state court in cases like this. See Mr. Justice Frankfurter's dissenting opinion in Darr v. Burford, supra, 339 U.S. 224, 70 S.Ct. 600.

The other perplexing question confronting me at the threshold of this case is whether it falls within our province to disagree with the Supreme Judicial Court's decision of the federal question it considered on Coggins' appeal should we feel disposed to do so. I pose this question because in the opinion of the court in Darr v. Burford, supra, 339 U.S. 216, 70 S.Ct. 596, in which on this point Mr. Justice Burton and Mr. Justice Clark agreed, it is said: "It is this Court which ordinarily should reverse state court judgments concerning local criminal administration." And in the same case on the following page it is said: "It is this Court's conviction that orderly federal procedure under our dual system of government demands that the state's highest courts should ordinarily be subject to reversal only by this Court and that a state's system for the administration of justice should be condemned as constitutionally inadequate only by this Court."

If the language quoted above is to be taken literally and given general application, then it would appear that even though a prior denial of certiorari to the highest state court is of no moment, it is not our function, except in extraordinary cases, to disagree with that court's determination that the local system for the administration of justice squares with federal constitutional requirements. Hence, if it is not for us to disagree with the highest state court, it would seem that the function of the inferior federal courts in these cases would be only to expedite the applicant for habeas corpus along his secondary road through the federal courts to a second petition to the Supreme Court for certiorari to review the federal question which it has once declined to consider. And, on the other hand, if the denial of certiorari to the highest state court is to be given any weight at all by the inferior federal courts in cases like the present, it would seem to follow that we ought also to expedite the applicant on his way for, as pointed out by Judge Learned Hand in the Schechtman case, supra, 172 F.2d 343, "unless we are altogether to disregard the action of the court of last resort in the very case itself, the denial ought to be conclusive." However, until clearer sailing directions are forthcoming I do not care to dispose of this case summarily, or perhaps even, perfunctorily, on the basis of either the proposition that in these cases

1. Ex parte Hawk, in turn, refers to Salinger v. Loisel, 265 U.S. 224, 230–232, 44 S.Ct. 519, 68 L.Ed. 989, as authority. That case, however, does not involve any question of certiorari to the highest court of a state, or even an application to a federal court for habeas corpus by a prisoner in state custody. It involves the question of the effect to be accorded by a federal court in habeas corpus proceedings brought by a prisoner in federal custody to the prior refusal of another federal court to discharge the prisoner on a like application.

denial of certiorari to the highest state court is conclusive upon us on the merits, or else that it is not our function as an inferior federal court to disagree with the Supreme Judicial Court of Massachusetts as to the constitutional adequacy of the system for administering criminal justice in that Commonwealth even if we should feel so inclined. I turn, therefore, to the petitioner's contention.

Coggins filed both of his motions for new trial *pro se*. But at the hearings on those motions he was represented by the counsel who had represented him at the trial. He was also present at both hearings personally pursuant to writs of habeas corpus *ad testificandum* issued on his application by the justice of the Massachusetts Superior Court before whom the motions were heard, who as already appears was also the justice who had presided at the trial.

His first motion was supported by the affidavit of a witness for the Commonwealth at the trial who said in her affidavit that, motivated by jealousy, (she had been Coggins' fiancée but he had broken their engagement) she had then testified falsely with respect to statements indicative of guilt made to her by Coggins while he was confined in jail awaiting trial. This affidavit was corroborated by those of three others to the effect that the first affiant had admitted to them that she had testified falsely at Coggins' trial, and by that of still another to the effect that he was present when the first affiant visited Coggins in jail and nothing was then said by the latter tending to indicate his guilt. In addition, the affidavits of two persons were introduced tending to establish an alibi, and also those of two more tending to show that two police officers who had been subpoenaed to testify at the trial would have said had they been called, which they were not, that the Commonwealth's star identification witness at first had had great difficulty in identifying Coggins. Moreover, affidavits of Coggins' codefendant, and of the latter's brother, Alfred J. Dupont, Jr., were also introduced; the former to show the falsity of the testimony of a police officer with respect to incriminating statements made by Coggins in jail, and the

latter to show that the Commonwealth's principal witness on the issue of identity had originally identified the affiant as an assailant, but that in spite of this identification he had never been formally charged with participation in the crime.

All of these affidavits were presented to the justice at the hearing, who said he would consider them, and he also heard oral testimony by some of the affiants who were present in court.

Coggins' second motion for new trial was supported by another affidavit of the affiant who previously had sworn that she had testified falsely at the trial in which she reiterated her perjury, and also added, what she had significantly omitted from her first affidavit, that the falsity of her testimony was not only known to the prosecuting attorney, but also that he had encouraged her to give it. In addition to this affidavit Coggins requested the court to issue compulsory process to require the attendance at the hearing on this motion of the two Duponts, of one of the affiants who had corroborated the first affiant above, and also of one of the jurors who Coggins stated would say that he had given weight to the first affiant's testimony at the trial in arriving at his verdict. The court granted Coggins' request for process as to the juror and the corroborating affiant, but not as to the Duponts, and also granted an application made by Coggins for a writ of habeas corpus *ad testificandum* to enable him to attend the hearing, which was set for December 7. Thereupon Coggins applied for writs of habeas corpus *ad testificandum* to produce both Ralph P. Dupont, and also the brother Alfred J. Dupont, Jr., (who was also confined in the Massachusetts penitentiary) at the hearing. The court refused these writs and Coggins was so informed by letter from the clerk in which it is stated that the court would, however, consider the affidavits of the Duponts already on file. Coggins then wrote to the court that affidavits from the two Duponts were "practically out of the question" and that he would like to have them personally in court at the hearing "because they hold testimony and evidence which is one of the assignments of my motion" which "has nev-

er been discussed during my trial or hearing for a new trial." This request was not acted upon, and at the outset of the hearing on December 7, at which Coggins, his counsel, and the witnesses who had been summoned were present, Coggins repeated his request for the production of the two Duponts and asked for a recess to "have these men brought before this Court, as they are my first witnesses and are very important witnesses."

The court then said:

"Coggins, it was brought to your attention by the Court, whether your counsel brought it to your attention or not, I have no way of knowing, but I rather suppose he did, knowing him to be a very able attorney, and that he, as you have already said, did everything that possibly could be done in your behalf, but certainly I brought it to your attention at the hearing on June 25, 1948, on your motion for new trial at that time, that by Rule 46 of the Superior Court Rules, and I quote the rule:

" 'The Court need not hear any motion or opposition thereto grounded on facts unless the facts are verified or are apparent upon the record and files or are agreed and stated in writing signed by the attorneys for the parties interested.'

"I say I brought that to your attention June 25, if you did not already know it, but in spite of the rule, as I recall it now, on June 25, 1948, I did take some testimony at your request, and at your request at this hearing I have caused summons to be issued for two witnesses at your request. It isn't the practice to take oral testimony in such situations as this and the time has come when I must make it clear to you that I do not propose to take any oral testimony; that you must comply with the rule of the court in respect to this matter, and you can understand that I do not propose, because I have already indicated to you, to bring either or both of the Duponts here to testify orally, I repeat what had already been said to you by the Clerk in his letter to you, that I am willing to consider the affidavits already on file from both of these individuals."

Coggins replied that as a prisoner he was unable to "get a notary public to notarize such documents" as affidavits and the court replied: "That is a very interesting comment, sir, but it so happens on June 22nd, 1948, you filed in your behalf many affidavits, the number of them I am not attempting to state, and since then you have filed affidavits. Anything further, Coggins?"

Coggins then said that he was:

" * * * trying to explain they will notarize affidavits but they will not notarize affidavits that are going to hurt somebody or are incriminating themselves, and a notary public there, Mr. Joseph Tambeau, Chief Clerk of the prison, definitely refuses to notarize any such paper as what his testimony shall be, and I am a prisoner and I must obey the rules. If he says he shall not notarize it, he will not, and there is nothing I can do about it."

* * * * * *

"That is why, sir, I have requested those witnesses. They have very important testimony."

After some further colloquy the court terminated the discussion by saying: "I have already told you, sir, I am not going to bring the Duponts to court. What do you want to say about the motion, anything?"

The hearing then proceeded with oral testimony from the juror, and from the other witness who had been summoned, who said that the affiant who had sworn to her perjury at the trial had told the witness that she had been questioned by the police about her second affidavit, and told by them "that if she didn't take back what she had stated in her affidavit, they would send her to prison for life for perjury."

Coggins himself was then allowed to take the stand to tell the court that if Ralph P. Dupont were present he would testify that he was an eye witness to the homicide for which Coggins had been convicted, that he knew the persons who had participated therein, and that Coggins was not one of them, and that the brother, Alfred J. Du-

pont, Jr., if present, would testify "that it was he who had suggested to Ralph Dupont that the truth be told to prove the innocence of the petitioner."

In opposition to the motion the Commonwealth presented a police officer who testified that he had questioned the affiant who swore that she had perjured herself, and had shown her the statutory penalty for perjury, and that "while he questioned her as to the truth of her affidavits, she orally admitted that her testimony on the trial was true."

After considering matters with respect to the affidavit and testimony of the juror, and hearing arguments of counsel and of Coggins personally, the court took the motion under advisement and the next day denied it without opinion.

Coggins then succeeded in obtaining an affidavit from Ralph P. Dupont in which the affiant said that he was an eye witness to the homicide for which Coggins had been convicted, that he knew the persons who had participated therein, and that Coggins "was not present at the time the crime was committed." Coggins sent this affidavit to the clerk of the Massachusetts Superior Court with a motion to vacate judgment which the clerk refused to accept for filing on the ground of lack of statutory provision therefor. Coggins thereupon took his appeal from the denial of both of his motions for new trial to the Supreme Judicial Court of Massachusetts.

The foregoing facts are taken from the voluminous application for habeas corpus filed by Coggins in the court below. Since that court denied the application without requiring the respondent to answer and without a hearing, we assume them to be true. House v. Mayo, 324 U.S. 42, 45, 65 S.Ct. 517, 89 L.Ed. 739. Taking them as true, however, Coggins has not made out a case for the issuance of a writ of habeas corpus by the District Court. The reason for this is that, absent "exceptional circumstances of peculiar urgency", a federal court ought not to entertain applications for habeas corpus by persons in state custody unless otherwise the applicant would be without a remedy which is constitution-

ally adequate to redress the wrong complained of. And here it seems to me clear, first, that Massachusetts law afforded Coggins a remedy by motion for a new trial, and second, that the remedy afforded was constitutionally adequate in that under the law of the Commonwealth Coggins in the pursuit of the remedy afforded had a full and fair opportunity to prove the factual basis for the federal constitutional question presented within the requirements of the due process clause of the Fourteenth Amendment. See Ex parte Hawk, 321 U.S. 114, 118, 64 S.Ct. 448, 88 L.Ed. 572, cited with approval by this court in Buchanan v. O'Brien, 1 Cir., 181 F.2d 601, 603, in which, after stating that a federal court will not ordinarily re-examine on habeas corpus the merits of contentions once considered and adjudicated by the state courts, and certiorari has either been granted or denied, the court goes on to say, (omitting citations) : "But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy, * * * or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate, * * * a federal court should entertain his petition for habeas corpus, else he would be remediless."

It is true that the Massachusetts trial justice decided Coggins' motions without opinion so that we are in the dark as to his reasons for that action. Hence, although we know that the highest court of the Commonwealth found it unnecessary to consider Coggins' basic constitutional contention, we do not know whether or not the trial justice also found it unnecessary to do so. It may be that the trial justice believed Coggins' evidence, but, in ignorance of the rule of Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, failed to appreciate that the deliberate use of perjured testimony required vacation of the conviction. On the other hand it is equally probable that the trial justice, having presided at the trial and therefore having seen the affiant who swore that she had then perjured herself, and believing the police officer who testified for the Commonwealth

at the hearing on the second motion for new trial, found Coggins' evidence that perjured testimony was knowingly used to obtain his conviction wholly unworthy of belief, and thus did not reach the constitutional question at all.

 The first assumption, *i. e.* that the trial justice believed Coggins' evidence but made an error of federal constitutional law, is not open to us for two reasons. In the first place an applicant for habeas corpus to make out a case has the burden of alleging and proving primary facts, not inferences, that show, notwithstanding the presumption of constitutional regularity in state court proceedings that he has been in fact denied due process of law. Schechtman v. Foster, 2 Cir., 172 F.2d 339, 342; Darr v. Burford, 339 U.S. 200, 218, 70 S.Ct. 587, 94 L.Ed. 761, and cases cited. In the second place the assumption that the trial justice was unaware of the well settled rule that a conviction obtained by the deliberate use of perjured testimony deprived the accused of due process of law would be a rather violent one in view of the clear pronouncement several years ago in Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, later reaffirmed in Pyle v. Kansas, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214, and White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348. Moreover, it has long been the rule that we are not at liberty "to presume that the decision of the state court would be otherwise than is required by the fundamental law of the land, or that it would disregard the settled principles of constitutional law announced by this court, upon which is clearly conferred the power to decide ultimately and finally all cases arising under the constitution and laws of the United States." Ex parte Royall, 117 U.S. 241, 252, 6 S.Ct. 734, 740, 29 L.Ed. 868, cited with approval in Darr v. Burford, 339 U.S. 200, 205, 70 S.Ct. 587, 94 L.Ed. 761. See also Bute v. Illinois, 333 U.S. 640, 671–672, 68 S.Ct. 763, 92 L.Ed. 986.

 I think we ought therefore to assume, in the silence of the trial justice, that he disbelieved Coggins' evidence, and hence found no occasion to consider the validity under the due process clause of the Fourteenth Amendment of a conviction obtained by the conscious use of perjured testimony. In short, I agree with the Court of Appeals for the Second Circuit that a prisoner in state custody makes out a case in the District Court for federal habeas corpus in cases like this only in the event that he can affirmatively show that the state court denying his application either failed to give any consideration at all to his evidence, or else failed to understand that as a matter of federal constitutional law the deliberate use of perjured testimony vacates a conviction based thereon. Schechtman v. Foster, 172 F.2d 339.

 Moreover it is also true that under Massachusetts law a party moving for a new trial in a criminal case does not have an absolute legal right to present the testimony of witnesses in support of his motion, but may under rule of court in the discretion of the trial justice be relegated to the use of affidavits only to support his factual contentions. This rule of criminal procedure does not in my opinion run afoul of the Fourteenth Amendment for it does not deprive one who has been convicted of a crime of any right which can properly be classified as fundamental, such as the right to notice of the criminal charge and the right to an adequate opportunity to be heard in defense. The rule merely provides an expeditious method for handling motions grounded on facts in that it authorizes the trial court in its discretion to require proof by affidavit rather than by the time consuming method of oral testimony. It is merely a rule of administrative convenience which does not offend any fundamental principle of justice of which I am aware, and it is well settled that "The commonwealth of Massachusetts is free to regulate the procedure of its courts in accordance with its own conception of policy and fairness, unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Snyder v. Massachusetts, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674. In brief the rule impresses me as a practical one which I can by no means say "is so flagrantly unjust that the Con-

stitution of the United States steps in to forbid it." Id., 291 U.S. 115, 54 S.Ct. 336.

It might, however, still be objected that invoking the rule with respect to prisoners whose affidavits are unobtainable serves to prevent the production of any evidence at all, and hence deprives a moving party of due process of law. In the first place it is doubtful if prison rules in fact prevented Coggins from obtaining affidavits from the Duponts. He obtained affidavits from them in support of his first motion, which the court said it would consider on his second one, and furthermore he obtained an affidavit from one of them the day following the second hearing. It may well be, and perhaps the trial justice well knew, that prison rules did not prevent prisoners from executing affidavits. In the second place the trial court permitted, and presumably considered, a statement by Coggins at the second hearing with respect to what the substance of the Duponts' testimony would be if called to the stand. Thus it appears that Coggins in fact succeeded in placing all his evidence before the court on his second motion for new trial despite the rule.

One more matter calls for brief mention. In the court below Coggins for the first time asserted that he had been denied due process of law because at the trial the court admitted the testimony of a police officer secreted in a cell between him and his codefendant who used "disguise, misrepresentation and psychological tactics" to prevent them from sleeping and in this way elicited from them "information and statements", presumably of a damaging nature, as to which he was allowed by testify. The District Court refused to consider this contention for the reason that Coggins had never attempted to raise it in the Massachusetts courts and hence had not exhausted his state remedies. This action on the part of the court below is correct. Darr v. Burford, 339 U.S. 200, 203, 70 S.Ct. 587, 94 L.Ed. 761.

The order of the District Court is affirmed.

MAGRUDER, Chief Judge (concurring).

I concur in the judgment of affirmance, though I am not prepared to join in all that is said in the opinion by Judge Woodbury.

Petitioner is being held by respondent, warden of the State Penitentiary, to serve a life sentence pursuant to a judgment of conviction for murder in the second degree. His basic claim, it seems to me, is that the judgment of conviction was obtained in violation of his constitutional right to a fair trial, in that at the trial the prosecuting attorney knowingly made use of perjured testimony of a material witness as part of the state's case. It is well settled that such unscrupulous conduct by the prosecution is a denial of due process of law. Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; Hysler v. Florida, 1942, 315 U.S. 411, 413, 316 U.S. 642, 62 S. Ct. 688, 86 L.Ed. 932; Pyle v. Kansas, 1942, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214; White v. Ragen, 1945, 324 U.S. 760, 764, 65 S.Ct. 978, 89 L.Ed. 1348. Though the cases do not focus specifically on the point, I take it that such a constitutional claim is not to be defeated merely because there may have been other evidence, untainted, sufficient to warrant a conviction; that the burden is not on the petitioner to show a probability that in the jury's deliberations the perjured evidence tipped the scales in favor of conviction. If the prosecutor is not content to rely on the untainted evidence, and chooses to "button up" the case by the known use of perjured testimony, an ensuing conviction cannot stand, and there is no occasion to speculate upon what the jury would have done without the perjured testimony before it.

Here Coggins, in filing his motions for a new trial on the ground of newly discovered evidence, availed himself of corrective process afforded by the state, by which he might have obtained relief from the judgment of conviction which he claimed to be constitutionally invalid. But assuming for the moment that the prosecution did in fact knowingly make use of perjured testimony at the trial, we would on that assumption have a case where the state's corrective process, however fairly and reasonably conceived, and however

fairly administered, failed to correct the constitutional error inherent in the judgment of conviction. Since the rules of res judicata are not in all strictness applied in habeas corpus cases,[2] then it may be asked why petitioner, in his present application to the court below for a writ of habeas corpus, should not have been afforded an opportunity to prove the allegation of his petition that his conviction was based upon the known use of perjured testimony.

In this connection I have difficulty with some of the language, though not the holding, in Schechtman v. Foster, 2 Cir., 1949, 172 F.2d 339, a case quite similar to the one at bar. In the Schechtman case, the available corrective process was a petition to the trial court for a writ, *coram nobis*. The petitioner had invoked this remedy on the ground that his conviction had been obtained upon perjured testimony in violation of his constitutional rights; and after denial of relief in the state courts he filed a petition for habeas corpus in a federal district court. In affirming an order dismissing the petition without a hearing, the court of appeals said, 172 F.2d at page 341: "If the [state] judge who denied that petition [for a writ *coram nobis*] did in fact consider the evidence as a whole, and if he decided that it was not, even prima facie, sufficient to make out a case of deliberate presentation by the prosecution of perjured testimony, Schechtman was accorded the full measure of his constitutional rights. It must be remembered that upon habeas corpus a federal court does not in any sense review the decision in the state courts. Here, for example, the District Court could not properly have issued the writ, no matter how erroneous the judge had thought the state judge's conclusion that the evidence did not make out a prima facie case of the deliberate use of perjured testimony. The writ was limited to the assertion of the relator's rights under the Fourteenth Amendment; and due process of law does not mean infallible process of law. If the state courts have honestly applied the pertinent doctrines to the best of their ability, they have accorded to an accused his constitutional rights."

Where a person has been convicted on a trial satisfying in full the requirements of due process of law, he will not be allowed to attack the judgment of conviction collaterally by a petition for habeas corpus alleging that he was in fact innocent and erroneously convicted, even that particular testimony against him was false or perjured (so long as this was not with the knowledge or connivance of the prosecution). In that sense "due process of law does not mean infallible process of law"; the convicted person cannot use a writ of habeas corpus to obtain a trial *de novo* on the issue of his guilt. But such is not this case, nor was it the Schechtman case. No amount of due process *subsequent* to a judgment of conviction, if it fails to give relief against a constitutional error occurring at the trial, can wash away the fact, if it be a fact, that the petitioner's conviction was obtained in denial of his constitutional rights.

Therefore it seems to me that the court below in a broad sense had "jurisdiction" on the petition for habeas corpus to inquire into the truth of petitioner's allegation that the prosecution made known use of perjured testimony at the trial. But it does not necessarily follow that the case is an appropriate one for the exercise of this power, or more precisely, as the question comes to us on this appeal, that the denial of the writ here without a hearing is reversible on the ground of abuse of discretion. Cf. In re Lincoln, 1906, 202 U.S. 178, 180, 26 S.Ct. 602, 50 L.Ed. 984. In United States ex rel. Kennedy v. Tyler, 1925, 269 U.S. 13, 17, 46 S.Ct. 1, 3, 70 L.Ed. 138, the Court said: "The rule has been firmly established by repeated decisions of this court that the power conferred on a federal court to issue a writ of habeas corpus to inquire into the cause of the detention of any person asserting that he is being held in custody by the authority of a state court in

2. See Salinger v. Loisel, 1924, 265 U.S. 224, 230–231, 44 S.Ct. 519, 68 L.Ed. 989; Darr v. Burford, 1950, 339 U.S. 200, 214, 70 S.Ct. 587, 94 L.Ed. 761; Johnston v. Wright, 9 Cir., 1943, 137 F.2d 914; United States ex rel. Gregoire v. Watkins, 2 Cir., 1947, 164 F.2d 137, 138.

violation of the Constitution, laws, or treaties of the United States, is not unqualified, but is to be exerted in the exercise of a sound discretion. The due and orderly administration of justice in a state court is not to be thus interfered with save in rare cases where exceptional circumstances of peculiar urgency are shown to exist."

I have examined the transcript of the full hearings on the two motions by Coggins for a new trial; they are on file in the Supreme Judicial Court and were before that court on the appeal. At both the hearings, as well as at the trial, Coggins was represented by experienced counsel.

Petitioner's first motion for a new trial did not raise any constitutional question. One Theresa Rutina, a state's witness at the trial, had testified to a certain incriminating admission made by Coggins during a conversation she had with him at the jail. In support of his motion, Coggins submitted an affidavit by Theresa Rutina, executed May 12, 1948, affirming that her testimony against him was untrue, and that it had been motivated by "intense feelings of jealousy" she felt toward Miss Doris Faulkner who had supplanted her in Coggins' affections. The affidavit contained no affirmation that the perjured testimony was instigated by the prosecutor, nor even that he was aware of its falsity. Coggins "cannot, of course, contend that mere recantation of testimony is in itself ground for invoking the Due Process Clause against a conviction." Hysler v. Florida, 1942, 315 U.S. 411, 413, 62 S.Ct. 688, 690, 86 L.Ed. 932. Nor, under the Massachusetts decisions, does the mere recantation of testimony by a government witness require the setting aside of a verdict and the granting of a new trial. Thus in Commonwealth v. Gwizdoski, 1933, 284 Mass. 578, 581, 188 N.E. 383, 384, the court said: "After Dombzalski had recanted, it was the duty of the judge, on a motion for a new trial, to give grave consideration to the question whether his testimony at the trial was worthy of credit. But it cannot be said that as matter of law the judge was required to grant a new trial. A judge is not bound to believe an affidavit. * * * Justice would not be served by a rule of law that a verdict must go for naught whenever a necessary witness can be induced, or for some reason decides, to repudiate his sworn testimony."

During the course of the hearing on this first motion for a new trial, Judge Pinanski expressed himself as concerned with the truth of Rutina's affidavit that she had testified falsely at the trial; and "more important than anything else" he was concerned with "whether her testimony at this trial was of such importance that it affected the defendant, otherwise he would not have been affected." The Assistant District Attorney took his cue from this remark and in his argument minimized the importance of Rutina's testimony as being "only a small drop in the bucket", asserting that "without the testimony of Theresa Rutina there was overwhelming evidence of the guilt of Michael Coggins". But it is important to note that this took place at the hearing on the first motion, which presented no federal constitutional question. At that stage, even assuming that Rutina had testified falsely at the trial, it was relevant for the judge, in the exercise of his discretion in granting or denying a new trial, to consider the weight of Rutina's testimony and to determine whether, in view of the evidence as a whole, it was likely that such testimony played a decisive part in the jury's verdict of guilty.

After denial of his first motion for a new trial, Coggins presented a second motion, this time taking pains to include an allegation that the perjured testimony of Theresa Rutina was known to be such by Mr. Sprague, the prosecutor, and was "presented as perjured testimony upon the advice, inveiglings and encouragement of the aforementioned Prosecutor." In support of this second motion, Theresa Rutina obliged by executing a new affidavit to the same effect as her first one, with the added embellishment that the prosecutor had asked her to testify that Coggins had made a certain incriminating admission to her at the jail; that the prosecutor told her that the state "had enough evidence to get Coggins, but I could help him a lot if I said this also —even though it was not exactly true." In rebuttal of this affidavit, an officer of the

state police testified at the hearing on the second motion that when he questioned Rutina as to the truth of her affidavit, she admitted orally that her testimony at the trial was true. Also at the hearing on the second motion, Coggins, apparently in the belief that it would strengthen his case for a new trial, presented to the judge an unsworn statement signed by one of the jurors to the effect that he had considered Rutina's testimony "to be vitally important" and that it played "a great part" in the verdict he rendered. To counter this statement the Commonwealth presented an affidavit of the same juror to the effect that he had signed the aforesaid statement under a misapprehension; "that insofar as I was concerned I was satisfied of Coggins' guilt without the testimony of Theresa Rutina and would have found him guilty without Rutina's testimony." Evidently, therefore, the injection into the second hearing of this issue whether Rutina's alleged perjured testimony played a decisive part in the jury's verdict was at the instance of Coggins rather than of the Commonwealth. Of course such issue would not have been out of place if the judge believed Rutina's affidavit to the extent of her affirmation that she had given false testimony at the trial, and disbelieved her affidavit to the extent that she belatedly alleged that such false testimony was knowingly instigated by the prosecutor. In fact, during the course of the argument at the second hearing, little or no notice was taken of this belated allegation by Rutina of the prosecutor's complicity. From a reading of this transcript of the second hearing as a whole, I see no reason at all to infer that Judge Pinanski (1) believed that Rutina had perjured herself at the trial, (2) believed that this testimony was introduced by the Commonwealth at the trial with the knowledge by the prosecutor of its untruth, but (3) misconceiving the scope of the protection of the Due Process Clause, concluded that the ensuing conviction was not thereby vitiated, because in all likelihood Rutina's testimony did not play a decisive part in the jury's verdict. At one point during the hearing on the second motion, Judge Pinanski remarked: "I say to him if I found as a fact he was convicted upon perjured testimony, I would set aside the verdict of the jury without the slightest hesitation." It is altogether reasonable to infer that Judge Pinanski denied the motion for a new trial because he did not believe Rutina's recantation.

The second motion for a new trial was denied, and on appeal therefrom the judgment was affirmed. Commonwealth v. Coggins, 1949, 324 Mass. 552, 87 N.E.2d 200, certiorari denied, 1949, 338 U.S. 881, 70 S.Ct. 152

Safeguarding the constitutional rights of an accused is the obligation of state judges no less than federal judges. Though in accordance with common local practice the superior court judge made no formal findings of fact or conclusions of law, nor did he file a memorandum of decision, in denying the motion for a new trial, it is not to be assumed that he denied the motion under a misapprehension of well-settled requirements of the Due Process Clause of the Fourteenth Amendment. Such an assumption would be particularly out of place in the case of an able and respected judge such as the late Judge Pinanski, who presided at the trial of Coggins and heard his motions for a new trial. Judge Pinanski heard Rutina testify at the trial, he had opportunity to observe what manner of man the prosecutor was, and on the second motion for a new trial he heard the testimony of the police officer to the effect that Rutina, after having executed the recanting affidavit, admitted to him that the testimony at the trial was the truth. The judge was therefore in a favorable position to estimate the truth of Rutina's affidavits, particularly the truth of the new allegation in her second affidavit that the prosecutor put her up to testifying falsely. Under the circumstances the judge certainly had reason for robust skepticism; and the most likely inference is that Judge Pinanski disbelieved Rutina's affidavits, the second of which was the only foundation for Coggins' claim that his conviction had been obtained in violation of his constitutional rights because of the prosecutor's knowing use of perjured testimony.

Having failed in the state courts, Coggins now seeks to transfer the battle to the federal arena.

Generalizations in the field of habeas corpus have proved quite troublesome. Cf. the several opinions in Sunal v. Large, 1947, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982. One common generalization is that when a lower court has denied a petition for habeas corpus without requiring the respondent to answer and without a hearing, the appellate court on review "must assume that the petitioner's allegations are true." House v. Mayo, 1945, 324 U.S. 42, 45, 65 S.Ct. 517, 89 L.Ed. 739; Williams v. Kaiser, 1945, 323 U.S. 471, 473–474, 65 S.Ct. 363, 365, 89 L.Ed. 398. But no such assumption is required where the petitioner had previously filed another petition for habeas corpus, setting forth the same ground of relief, and the judge before whom the earlier petition was presented, after a fair hearing and full consideration, had found against him on the allegations of fact underlying his constitutional claim. Though the second petition for habeas corpus is not absolutely barred on grounds of res judicata,[3] nevertheless, the court may as a matter of discretion decline to inquire into the matter again, where it might reasonably conclude, in view of the consideration and denial of the earlier application, that the allegations of the petition are probably groundless. "Thus there is avoided abuse of the writ by repeated attempts to secure a hearing on frivolous grounds, and repeated adjudications of the same issues by courts of coordinate powers." Darr v. Burford, 1950, 339 U.S. 200, 215, 70 S.Ct. 587, 596, 94 L.Ed. 761. Having as a matter of discretion denied such a renewed application, the court ought not pro forma to issue a certificate of probable cause in order to enable petitioner to appeal, for this would defeat the salutary purpose of the requirement in 28 U.S.C.A. § 2253. See Fred Tate v. People of the State of California, 9 Cir., 1951, 187 F.2d 98.

So far as this matter of discretion goes, I don't suppose it would make any difference whether the earlier application for habeas corpus had been made to a state court or to a federal court. In Darr v. Burford, supra, the earlier application had been made to the Oklahoma Court of Criminal Appeals; and even if the petitioner in that case had not been under what the Supreme Court held to be an insuperable obstacle, namely, that he had failed to apply for certiorari, I think the federal district court could in its discretion have declined to entertain the second petition for habeas corpus if it concluded from an examination of the earlier habeas corpus proceedings that petitioner had had a fair opportunity to establish the factual basis of his constitutional claim and had failed to do so. In Ex parte Cuddy, C.C.S.D.Cal.1889, 40 F. 62, Mr. Justice Field had before him a second application for a writ of habeas corpus. While holding the doctrine of res judicata inapplicable, he said, 40 F. at page 65, that the judge before whom a second application was made "may take into consideration the fact that a previous application had been made to another officer and refused; and in some instances that fact may justify a refusal of the second. The action of the court or justice on the second application will naturally be affected to some degree by the character of the court or officer to whom the first application was made, and the fullness of the consideration given to it." This language was quoted with approval in Salinger v. Loisel, 1924, 265 U.S. 224, 231, 44 S.Ct. 519, 68 L.Ed. 989. Nor would it matter, I think, whether the earlier adverse factual determination had been made in a habeas corpus proceeding, or under some other form of state corrective process, such as a writ of error coram nobis, or as in the case at bar by a motion for a new trial on the ground of newly discovered evidence. I am speaking now of a prior adverse factual determination, not a prior adverse ruling on a clean-cut question of federal constitutional law, as to which quite different considerations apply, which need not be spelled out now.

Summarizing my view on the present case: I think that the court below could reasonably conclude, upon a reading of the

---

3. See footnote 2 supra.

voluminous petition for habeas corpus, that there was in all likelihood nothing in it; that if there were substantial reason to believe that Coggins had been convicted upon perjured testimony with the complicity of the prosecutor, he would have obtained a new trial under the corrective process afforded by the state and administered here, so far as appears, in entire good faith and rectitude by the trial judge and by the Supreme Judicial Court; that this is not one of those exceptional cases where a federal district judge should exercise the delicate jurisdiction of inquiring into the administration of criminal justice in a state; and that in the exercise of a sound judicial discretion the petition for habeas corpus should be dismissed without prejudice. Of course, to the extent that entertaining a petition for habeas corpus is within the discretion of the judge, the personality of the judge to whom the petition is presented may make a difference; one judge may be inclined to issue the writ, another to dismiss the petition. This is inherent in the situation, and inescapable. If the judge in such a case dismisses the petition, appellate review is limited to an inquiry whether there has been an abuse of discretion. Appellate courts cannot lay down binding rules for the exercise of this discretion. To the extent that they do prescribe binding rules for particular situations, the area of discretion is correspondingly reduced.

I reject the alternative that under the circumstances here present the district judge, contrary to the holding of the Second Circuit in the Schechtman case, supra, was bound as a matter of law to throw open the federal court to a full-dress hearing on whether the state prosecutor connived at the introduction of perjured testimony to aid in the conviction of Coggins. If the court below had done this, and Coggins had offered in support of his claim no more than he offered to Judge Pinanski, how could the federal court have come to the confident conclusion, contrary to what I think must have been the conclusion of Judge Pinanski, that Rutina perjured herself at the trial to the knowledge and indeed at the suggestion of the prosecutor? And if Coggins has any additional evidence

in support of his grave charge, which he has not presented to the state courts, is it not clear from all the recent cases, and now from the statutory mandate of 28 U.S.C.A. § 2254, that such new evidence should first be presented to the state courts if state corrective process is still available to vindicate petitioner's constitutional claim? Notwithstanding the lapse of time, and all that has gone before, there is still such corrective process available, in the form of a writ of error, which may be issued out of the Supreme Judicial Court under C. 250, Mass.Gen.Laws (Ter.Ed.1932) §§ 1, 2, 9 and 10. See Allen v. Commonwealth, 1949, 324 Mass. 558, 87 N.E.2d 192; McGarty v. Commonwealth, Mass., 95 N.E.2d 158.

In reaching this conclusion, I attach no significance to the denial of certiorari by the Supreme Court of the United States at an earlier stage. 338 U.S. 881, 70 S.Ct. 152.

Whatever difficulties there may be with the holding and discussion in Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761, they need not perplex us here. Whether or not failure of Coggins to apply for certiorari would have been a conclusive bar to the entertainment of a subsequent petition for habeas corpus, Coggins did apply for certiorari here and was denied. The Supreme Court has many times admonished us that the denial of a writ of certiorari "imports no expression of opinion upon the merits of the case," United States v. Carver, 1923, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361, and I do not understand that the opinion of the Court in Darr v. Burford has repudiated that proposition. See 339 U.S. at page 216, 70 S.Ct. at page 596.

Furthermore, in any event a lower federal court in a habeas corpus case could certainly not attach any conclusive significance to an earlier denial of certiorari without examining very closely into the record presented to the Supreme Court on the application for certiorari to see whether a federal question was necessarily involved in the judgment of the state court sought to be reviewed, and if so, what that question was. In the present case I do not see that there was any substantial constitutional

question presented by Coggins' application for certiorari.

Coggins objected that in the hearings on the motions for a new trial Judge Pinanski required him to offer most of his evidence in affidavit form. But it is a settled rule of Massachusetts practice, see 324 Mass. at pages 556–557, 87 N.E.2d at pages 202, 203, that a party has no right to insist upon the presentation of oral evidence at a hearing upon a motion for a new trial; that the superior court may receive oral testimony, affidavits, or both, at its discretion. It cannot seriously be contended that this rule of local practice runs afoul of the Due Process Clause. The state is not obliged to maintain any particular form of corrective process. See Hysler v. Florida, 1942, 315 U.S. 411, 415–417, 316 U.S. 642, 62 S.Ct. 688, 86 L.Ed. 932. Massachusetts could indeed abolish the motion for a new trial on the ground of newly discovered evidence, and leave convicted persons to their remedy by way of application to the Supreme Judicial Court for a writ of error. It is not the function of the Supreme Court of the United States to prescribe the details of state procedure in these matters; though the adequacy and fairness of any particular state corrective process might have relevance upon the appropriateness of the exercise of habeas corpus jurisdiction by a federal court. See 28 U.S.C.A. § 2254.

Nor do I see how the Supreme Court on certiorari could have possibly determined the merit of Coggins' claim that the prosecutor knowingly made use of perjured testimony to secure his conviction. The Supreme Judicial Court had held that Judge Pinanski, following the approved local procedure in hearing the motions for a new trial, did not abuse his discretion in denying a new trial. This conclusion could not have been overturned by the Supreme Court as a matter of federal constitutional law.

And so, it seems to me, the denial of certiorari has no bearing upon the question now before us. Entirely apart from that, I think the order of the District Court should be affirmed.

. FORD, District Judge (dissenting).

The petitioner filed his petition for habeas corpus in the district court and his main contention was that the state prosecuting authorities knowingly used perjured testimony to secure his conviction for the crime of murder in the Massachusetts court in November, 1947. The court denied the application without requiring the respondent to answer and without a hearing, and the allegation that perjured testimony was knowingly used to secure his conviction must be assumed to be true and makes a prima facie showing of the denial of the prisoner's due process rights under the Fourteenth Amendment. Williams v. Kaiser, 323 U.S. 471, 474, 65 S.Ct. 363, 89 L.Ed. 398.

On June 9, 1948 and September 24, 1948, the petitioner filed two motions for a new trial based on the ground of newly discovered evidence in the Massachusetts court. The hearings on the motions for a new trial, based on the principal ground of newly discovered evidence, i. e., that perjured testimony was knowingly used by the state authorities, were confined for the most part to affidavits presented by Coggins, which, if true, reflected perjured testimony and its knowing use by the state authorities. The motions for a new trial were heard on June 25 and December 7, 1948. The first motion was denied on June 28 and the second motion was denied on December 8, 1948.

The court denied both motions without making any findings with respect to the ultimate issue of fact, to wit, whether perjury was knowingly used by the state authorities to secure the prisoner's conviction, and without filing an opinion. On appeal, the Massachusetts Supreme Court did not consider the constitutional question with which we are concerned here and the United States Supreme Court denied certiorari. The record in the state court on the motions for new trial is barren as to the reasons for the state court's action and the following questions remain unanswered. Did the court find that perjury was knowingly used? If it did so find, did it know that under the

doctrine of Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, the constitutional rights of the defendant would be violated? Or did the court deny the motions in the exercise of its discretion, Commonwealth v. Coggins, 324 Mass. 552, 87 N.E.2d 200, and not consider the evidence at all? Or, under Massachusetts practice, did the court deny Coggins' motions for a new trial because it concluded that the perjury, Coggins' newly discovered evidence, was committed but was not a material factor with the jury in his conviction? Davis v. Boston Elevated Railway Company, 235 Mass. 482, 495, 496, 126 N.E. 841.

This latter ground would run afoul of Mooney v. Holohan, supra, and it was on this ground the hearing on the second motion was conducted.[4] The principles with respect to motions for a new trial set forth in the Davis case are applied to criminal as well as civil cases. Commonwealth v. Coggins, supra, 324 Mass. at page 555, 87 N.E.2d 200. Also, the court could have dismissed the motions on the ground that the evidence was not "newly discovered", Commonwealth v. Coggins, supra, 324 Mass. at page 554, 87 N.E.2d

200, and, of course, if this were done, it would connote a failure to consider the merits of the constitutional question.

There is no question that Massachusetts afforded opportunity under its practice for the petitioner here to prove deliberate use of perjured testimony to secure his conviction. The basic question is: did the prisoner secure a full and fair hearing?

Where the state courts have considered and adjudicated the merits of a prisoner's contentions and the Supreme Court has reviewed or declined to review the state court's decision, a federal court will not ordinarily re-examine upon a writ of habeas corpus the questions thus adjudicated. Ex parte Hawk, 321 U.S. 114, 118, 64 S. Ct. 448, 88 L.Ed. 572. Of course, the court was not saying this circumstance was a bar to further proceedings in the federal court to re-examine the question even if the state Supreme Court considered the question and the United States Supreme Court denied certiorari. It was addressing itself to the abuse of the writ and considering the question of *res judicata*. The court merely pointed out that the circumstance that the state court had adjudicated the question should be taken into consid-

---

4. After reading the transcripts of the hearings on the motions for new trial, the conclusion is irresistable that Judge Pinanski was considering Coggins' contentions with respect to the alleged perjured testimony, not in the light of Mooney v. Holohan, supra, but in the light of the principles with respect to motions for new trials laid down in Davis v. Boston Elevated Railway Company, supra, and which, of course, are applicable to criminal trials. Judge Pinanski was not considering the perjured testimony in the light of a federal constitutional claim but only as a state claim. That he did not consider the federal claim is evidenced from the following, quoted from the transcripts on the motions:

Judge Pinanski. "* * * One of the natural difficulties which the court should have with an affidavit like Mrs. Rutina's is that she now says, or what amounts to saying, in this affidavit or signed statement, that she perjured herself at the time of trial, and therefore I must scrutinize carefully her new affidavit and all the affidavits that may throw any light upon hers, and determine whether she is still perjuring herself. *But more important*

*than anything else is whether her testimony at this trial was of such importance that it affected the defendant, otherwise he would not have been affected. * * ** (Emphasis mine.)

* * * * *

"Can you, without too much trouble, turn to the place in her testimony which you say was so damaging. It wasn't very long."

The Assistant District Attorney argued. "* * * the testimony of Theresa Rutina is only a small drop in the bucket resulting in the conviction of the defendant Michael F. Coggins. I say to you in all earnestness that without the testimony of Theresa Rutina there was overwhelming evidence of the guilt of Michael Coggins, * * *."

The prisoner presented a statement by a juror to the effect that the testimony of Rutina was a factor in securing his conviction; this was countered by the production of the juror at the hearing who repudiated this statement.

The effect of the perjured testimony, if made, was a major issue at these hearings.

eration by the federal court in exercising its discretion. It did not say that consideration of the constitutional question by the state court acts as a bar to the federal court hearing the truth of the fact and law involved. See Salinger v. Loisel, 265 U.S. 224, 230, 231, 44 S.Ct. 519, 68 L.Ed. 989; cf. 28 U.S.C.A. § 2244. Ex parte Hawk, supra, 321 U.S. at page 118, 64 S. Ct. at page 450, goes on to say: "But where resort to state court remedies has failed to afford a *full and fair* adjudication of the federal contentions raised, * * * or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate, * * * *a federal court should entertain* his petition for habeas corpus, else he would be remediless." (Emphasis mine.) Cf. White v. Ragen, 324 U.S. 760, 767, 65 S.Ct. 978, 89 L.Ed. 1348. If the state court proceedings in the case here were inadequate, and it seems they were, the district court *should* have entertained the petition.

I do not, as I say, consider there was a full adjudication of the federal contentions raised by the prisoner in the state court. The state remedy pursued by Coggins proved to be wholly inadequate. In fact, I do not find there was any adjudication at all of the basic factual question involved. Also, there is not the slightest evidence that the state court considered the constitutional claim in any respect, i. e., whether perjured testimony knowingly used, in and of itself, violated the Fourteenth Amendment. What the state court did consider was whether there was deliberate use of perjury and whether it was a factor in the conviction of the prisoner.

Judge WOODBURY states that federal courts are not courts of review of state court action. However, a federal court is not sitting as a court of review in a habeas corpus proceeding. If the Massachusetts court committed an error of law, e. g., found knowing use of perjury, concluded it was not a material factor in securing Coggins' conviction, and refused to vacate the conviction, certainly this court would entertain habeas corpus to correct the er-

ror. *Res adjudicata* has no application to petitions for habeas corpus and the power to overturn state criminal administration is not limited to the United States Supreme Court. Darr v. Burford, 339 U.S. 200, 216, 70 S.Ct. 587, 94 L.Ed. 761. "A petition for habeas corpus in a federal court, after the State process has been exhausted, 'comes in from the outside,' as Mr. Justice Holmes phrased it in his dissenting opinion in Frank v. Mangum, 237 U.S. 309, 345, 346, 35 S.Ct. 582, 594, 595, 59 L.Ed. 969; a view which established itself as law in Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L. Ed. 543." Mr. Justice Frankfurter dissenting in Darr v. Burford, supra, 339 U.S. at page 233, 70 S.Ct. at page 605. It cannot be denied that the petitioner in some court at some time is entitled to have the verity of his evidence with respect to the perjured testimony considered and the facts determined, even if at first blush it does not seem credible. In the absence of findings of fact, it is impossible, when one considers the alternatives upon which the motions for new trial could be denied, to state the merits were fully and fairly adjudicated. On the petitioner's appeal from the denial of his motions, the Supreme Court of Massachusetts, Commonwealth v. Coggins, supra, was as much in the dark as I am as to the ground for the court's denial of the petitioner's motions and it in turn did not consider at all the basic federal question of constitutional law involved, i. e., the knowing use of perjured testimony or its relation to the Fourteenth Amendment, and the United States Supreme Court did not have it before it on the denial of certiorari. As a matter of fact the state Supreme Court could not consider Coggins' constitutional claim, as no findings were made by the trial court. The Massachusetts Supreme Court pointed out that the lower court was empowered to dismiss the motions as a matter of discretion and for all the record shows, it would seem as though that is just what the lower Massachusetts court did and the Supreme Court approved.

There is something more to the due process of law guaranteed by the Fourteenth Amendment than regard for matter of form of procedure. Federal courts can and

should look beyond form and inquire into the very substance of the matter to the extent of deciding whether a prisoner has been deprived of his liberty without due process of law. Frank v. Mangum, supra, 237 U.S. 331, 35 S.Ct. 588. Federal courts can inquire whether the proceedings have been more than an empty shell although every form may have been preserved. Mr. Justice Holmes in dissenting opinion in Frank v. Mangum, supra, 237 U.S. at page 346, 35 S.Ct. at page 594. Mr. Justice Holmes, 237 U.S. on page 347, 35 S.Ct. on page 595, of Frank v. Mangum, supra, states: "We have held in a civil case that it is no defense to the assertion of the Federal right in the Federal court that the state has corrective procedure of its own— that still less does such procedure draw to itself the final determination of the Federal question. * * * *When the decision of the question of fact is so interwoven with the decision of the question of constitutional right that the one necessarily involves the other, the Federal court must examine the facts."* (Emphasis mine.)

Resort to United States Supreme Court decisions shows the insistence of that court on the requirement that prisoners confined both under federal and state process be afforded a full opportunity to be heard on the factual and legal aspects of a federal question. There is no need of an extensive review of the cases. Where the Supreme Court has had doubt concerning the basis of a state court judgment, it has remanded the case with a directive that the prisoner may proceed in the federal district court. Burke v. Georgia, 338 U.S. 941, 70 S.Ct. 422. As the court stated in Darr v. Burford, supra, 339 U.S. at page 215, 70 S.Ct. at page 596: "If this Court has doubts concerning *the basis of state court judgments,* the matter may be handled as in Burke v. Georgia, 338 U.S. 941, 70 S.Ct. 422, [perjury case] with an express direction that the petitioner may proceed in the federal * * * court * . * *."* (Emphasis mine.) Such doubt exists here. The Supreme Court also stated in Darr v. Burford, supra, 339 U.S. at page 215, 70 S.Ct. at page 596: "There may be issues of state procedure, *questions of fact regarding the*

*alleged violations of constitutional rights,* and issues of law respecting the scope of constitutional rights—*problems made difficult by the frequent practice of state courts to dismiss the applications without opinion."* (Emphasis mine.) The court also states, 339 U.S. at page 215, 70 S.Ct. at page 596: "If the District Court feels that error may have occurred, it has power to examine the application to see if circumstances exist to justify it in holding a hearing on the merits." (Cf. Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61, where the case was remanded to the state court for a determination of the facts.) Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859; see cases sent back to the federal district court, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830. If, as in Burke v. Georgia, a state court case, where no opportunity was given to the prisoner under a state court statute to secure a hearing on his facts and constitutional question and the prisoner resorted to the federal court as the Supreme Court directed, the federal court would be required under the federal habeas corpus statute to make specific findings of fact, 28 U.S.C.A. § 2243; Walker v. Johnston, supra, 312 U.S. 287, 61 S.Ct. 579, the same procedure should be required in the state courts to satisfy due process where a federal question arises, if review in the federal courts is to be forestalled. Unless the state court does find the facts and states the reasons for its action, how can it be determined whether the prisoner has had a full and fair hearing of his constitutional question? We do not know in Coggins' case whether it was disposed of on a state ground contrary to federal law or on a federal ground. As the record remains in the absence of an opinion, Coggins' case, if perjury was found, might have been denied on a state ground i. e., that there was perjury knowingly used but it was not a factor in convicting the prisoner. If so, a federal court should inquire into the federal question. White v. Ragen, supra, 324 U.S. at page 765, 65 S.Ct. at page 981. Generally speaking, if it does not affirmatively appear in the disposition

of a federal question in the state court that a full and fair adjudication of the federal question was had—facts and constitutional claims—and the matter is open to the interpretation, as is the case here, that the prisoner's contentions were disposed of in a summary manner as a matter of discretion or on some such state ground as that the perjury, if it was committed, was not a material factor (Massachusetts state law) in securing the prisoner's conviction, the federal court should inquire into the facts and constitutional claim. Ex parte Hawk, supra, 321 U.S. at page 118, 64 S.Ct. at page 450.

My associates seem to dispose of this case by assuming or inferring that the state court judge found that the witness Rutina could not be believed and she did not commit perjury at the trial. If this assumption can be made, I would agree it would be the end of the petitioner's case, as the federal court would probably not entertain the petition in the exercise of its discretion. Darr v. Burford, supra, 339 U.S. at page 215, 70 S.Ct. at page 596; cf. 28 U.S.C.A. § 2244. Also, if this assumption can be made, this case should be disposed of in one paragraph. To put it another way, if there was a decision that there was no deliberate use of perjury in the state court, cases such as United States ex rel. Jackson v. Ruthazer, 2 Cir., 181 F. 2d 588, 589 and Goodwin v. Smyth, 4 Cir., 181 F.2d 498 would lead the way and the federal court in all probability would decline to examine further into the merits. The state court decisions in these cited cases, People ex rel. Jackson v. Ruthazer, 196 Misc. 34, 90 N.Y.S.2d 205, and Smyth v. Godwin, 188 Va. 753, 51 S.E.2d 230, show affirmatively that the state authorities made an exhaustive review of the facts. Here we have the converse of these cases. There is nothing to indicate there has been a determination of the facts and there is positive evidence that even if the state court found perjury, the deliberate use of perjury, it applied state law in deciding the constitutional claim and not federal law. This case, unlike the cases cited, leaves the proceeding in the state court in an aura of darkness as to an ade-

quate remedy—an unusual circumstance—that in the interests of justice should require a federal court to hear the facts and determine them no matter how depraved the petitioner appears to be from the record. Ex parte Hawk, 321 U.S. at page 118, 64 S.Ct. at page 450, 88 L.Ed. 572.

But how can this assumption, i. e., no perjury, be made, when there are other equally probable inferences, i. e., that the motions were dismissed as a matter of discretion; that the evidence was not newly discovered; that the court never heard of Mooney v. Holohan (the principle of the use of perjured testimony in its relation to due process is not found in any Massachusetts case); that even if it was acquainted with Mooney v. Holohan and Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214, it dismissed the motion on the ground the perjury was not a material factor in securing Coggins' conviction? How could a lower court decide that in all likelihood there was nothing in the petitioner's case? Judge Woodbury makes the assumption because of the silence of the trial justice. Judge Magruder seems to justify his inference upon what Judge Pinanski stated at one of the hearings on the motions: "I say to him if I found as a fact he was convicted upon perjured testimony, I would set aside the verdict of the jury without the slightest hesitation." This statement does not justify such an inference. Judge Pinanski said if "he was *convicted* upon perjured testimony." (Emphasis mine.) He does not say if he found perjured testimony was "used" he would grant the motions. What he was saying is what is set forth in footnote 1 of this memorandum, namely, he would set aside the verdict of the jury if the perjured testimony was a factor in *convicting* the prisoner. He was merely giving expression to the applicable Massachusetts law.

I do not believe, in any event, that the prisoner's constitutional rights should hinge on an assumption of the ultimate fact especially when that assumption is based on such extremely perilous foundations. The district court should refuse to review if the merits have already been "decided" against the prisoner, Darr v. Burford, su-

pra, 339 U.S. at page 215, 70 S.Ct. at page 596, not on an "assumption" they have been so decided.

Judge Woodbury, after assuming that the state court found no perjury, adds another ground for his conclusion by stating the prisoner in the state court did not sustain the burden of proof imposed on him in a case of this type and cites Schechtman v. Foster, 2 Cir., 172 F.2d 339. This case in denying a petition for habeas corpus had two other strings to its bow in addition to what is set forth here. It reached the conclusion the petitioner had not exhausted his remedies in the state court; also the court gave conclusive effect on the merits to a denial of certiorari in the Supreme Court. See Justice Frankfurter's discussion on effect of denial of certiorari in Darr v. Burford, supra, 339 U.S. at page 228, 70 S.Ct. at page 602, and footnote on Schechtman v. Foster. Schechtman seems to rule that the burden is on the petitioner to prove affirmatively that the state court did not consider and adjudicate the merits. Schechtman seems to say the way to carry the burden is to prove the court did not consider the evidence, or prove the court never heard of Mooney v. Holohan or Pyle v. Kansas. If we adopt this rule it would ordinarily impose an almost impossible burden on the prisoner in the absence of any reasons assigned by the state court for its decision. How can Coggins, in the absence of an opinion, prove that the court did not know that the deliberate use of perjured testimony would vacate the conviction? Again, how can Coggins, in the absence of findings, prove the court refused to consider the evidence? It would seem to me a prisoner is helpless under the circumstances.

Further, if we adopt the rule of the Schechtman case and require a prisoner, in order to secure a hearing on his petition in the district court, to prove at least that the court did not understand that the deliberate use of perjured testimony would vacate the conviction, it appears the record has supplied that proof for, as stated in footnote 1 of this memorandum, the state court judge, whether he knew this was the law or not, did not intend to apply the federal law. He stated as a fact that he was applying state law, i. e., that the perjury must be a factor in securing the conviction. Of what value was a knowledge of the federal law, if the court did not intend to apply it and might not have? It would seem from the record the Schechtman rule itself has been complied with here.

It seems to me that about all that has been decided in this case is that when a district court looks over a petition for habeas corpus and decides that there is in "all likelihood nothing in it", that if there was he would probably get relief in the state court, it will in no way be an abuse of discretion if the court dismisses the petition on the spot. I cannot agree. This method has the appearance of deciding the case before hearing the facts. Also, judges will differ as to the likelihood of there being nothing in it and it would be a matter of what judge looks over the petition. This makes for uncertainty and confusion. If the petitioner got the right judge he would secure a hearing, otherwise not. There should be a better guide than this for the district courts to follow.

It would seem to be that the most salutary rule to adopt in cases of this type, in order that the district courts will have some guide to future action, is that unless it affirmatively appears that the state court has considered the evidence and the constitutional claims, the state procedure has been inadequate and the federal district court should hear the application and determine the facts in accordance with 28 U.S.C.A. § 2243, where specific findings are required. This rule would seem consistent with what the Supreme Court stated in Ex parte Hawk, 321 U.S. at page 118, 64 S.Ct. at page 450, 88 L.Ed. 572, to the effect that if the remedy in the state court proves inadequate, the federal court should entertain the petition for habeas corpus, otherwise the prisoner would be remediless. And to leave a petitioner without remedy is an abuse of discretion.

I have approached the problems here keeping in mind we are concerned with a constitutional question and not with the

guilt of an individual who, the record might indicate, is guilty of the crime charged.

I would vacate the order of dismissal and send the case back to the district court for a hearing on the merits.