COMMONWEALTH *vs.* LOUIS GWIZDOSKI.

Bristol.    December 4, 1933. — December 27, 1933.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Homicide. Practice, Criminal,* Appeal with assignments of error, New trial. *Evidence,* Presumptions and burden of proof.

A verdict of guilty of murder in the second degree was warranted, at the trial of an indictment for murder, on evidence that the deceased was in default in making restitution of money stolen from the defendant's mother; that the defendant said, "If I get him, I will fix him"; that the defendant,.having seen the deceased pass by in the street on a certain evening, later that evening drove his automobile to the entrance of a lane, at the other end of which was a house where the deceased had spent a few days some weeks previously; that the defendant walked up the lane and returned twenty minutes later; that he then drove the automobile up the lane to the premises of the house, and there picked up the body of a man and placed it in the automobile; that he thereupon drove to another street, where he said that "he would finish him up himself," and put the body over a stone wall at a place where the body of the deceased, with the skull fractured and a stab wound in the heart, was found subsequently; and that on a later day, after the police had searched the defendant's house, he requested a friend to throw away a knife which he took from his pocket, saying, "The police will be coming down again. If they find it, it will be too bad for me."

The issue of the defendant's guilt was for the jury at the trial above described notwithstanding the circumstances that the testimony of the principal witness for the Commonwealth, who gave the only testimony connecting the defendant with the homicide, was uncorroborated and

was contradicted by the defendant, and that the defendant offered medical evidence that the witness's intelligence was low and that he was unusually subject to suggestion from others.

Upon an appeal with assignments of error following the trial of an indictment, this court did not consider the merits of assignments attacking passages in the charge to the jury because no exceptions to the charge had been saved.

No error of law was shown in the denial of a motion for a new trial of the indictment for murder above described based on an affidavit by said principal witness for the Commonwealth that his testimony at the trial had been perjured.

It *was stated* that it was the duty of the trial judge, in hearing the motion for a new trial above described, to give grave consideration to the question, whether the testimony of the principal witness was worthy of credit.

INDICTMENT, found and returned on November 18, 1932, charging the defendant with murder.

The indictment was tried in the Superior Court before *Beaudreau*, J. Material evidence is stated in the opinion. The defendant was found guilty of murder in the second degree. A motion for a new trial was denied. The defendant filed an appeal with assignments of error.

*W. A. Bellamy*, for the defendant.

*W. C. Crossley*, District Attorney, (*F. E. Smith*, Assistant District Attorney, with him,) for the Commonwealth.

LUMMUS, J. After a conviction in the second degree of the murder of John Roselowitz, the defendant brings the case here by appeal, with a summary of the record, a transcript of the evidence, and an assignment of errors, under G. L. (Ter. Ed.) c. 278, §§ 33A–33G.

The first error assigned is the refusal of the trial judge to direct a verdict of not guilty. There was evidence that the deceased had been ordered by a district court to make restitution for money stolen from the defendant's mother, that he was in default and could not be found until shortly before the murder, and that the defendant had complained to a police officer that the court had been too lenient with the deceased, saying, "Never mind. If I get him, I will fix him." There was evidence that on the evening of May 5, 1932, the defendant saw the deceased going by the defendant's store on Pine Street in Seekonk. At some dis-

tance, not defined by the evidence, at the end of a lane called Allen Lane, which ran from Agricultural Avenue, lived one Precipa, at whose house the deceased had spent a few days about three weeks before. One Dombzalski, who lived with the defendant, gave the only testimony that connected the defendant with the murder. Dombzalski testified that on the night of May 5, 1932, between eleven o'clock and midnight, after Dombzalski had been in bed, the defendant invited him to go to get some beer. They started out in the defendant's Ford automobile, with the defendant driving, turned into Allen Lane, and stopped. The defendant got out of the automobile and walked up the lane, leaving Dombzalski with the automobile. After twenty minutes the defendant returned, started the automobile, drove up the lane until he got to a pile of wood on the premises of Precipa. Dombzalski saw the body of a man in a sitting position at the woodpile. The defendant took the body, and laid it on the floor of the automobile, then turned the automobile around and drove out of the lane and to another road. There the defendant ordered Dombzalski to get out of the automobile, saying that "he. would finish him up himself." The defendant then put the body over a stone wall at a place which could have been found to be the same place where ten days later the body of the deceased, badly decomposed, with the skull fractured in three places and a stab through the heart, was found. Dombzalski testified further that on a later day, after the police had searched the defendant's house, the defendant pulled a knife from his pocket and asked Dombzalski to throw it away, saying, "The police will be coming down again. If they find it, it will be too bad for me." All this testimony of Dombzalski was contradicted by the defendant, who offered medical evidence that Dombzalski's intelligence was low, and that he was unusually subject to suggestion from others. Dombzalski's story was in no way corroborated. Nevertheless, the jury were the judges of the fact. *Commonwealth* v. *Leventhal,* 236 Mass. 516, 522. It cannot be said that there was no evidence warranting a verdict of guilty. There was therefore no error of law in

the denial of the motion for a directed verdict of not guilty.

The second and third assignments of error attack passages in the charge to the jury. As to them, it is enough to say that no exception to the charge appears to have been taken. G. L. (Ter. Ed.) c. 278, § 33B. *Commonwealth* v. *McDonald*, 264 Mass. 324, 336. *Commonwealth* v. *Hamel*, 264 Mass. 564, 568.

The fourth and last assignment is that the judge erred in denying a motion for a new trial based on an affidavit by Dombzalski, the principal witness against the defendant at the trial, that his testimony against the defendant was perjured. Without that testimony, the Commonwealth had little evidence against the defendant. After Dombzalski had recanted, it was the duty of the judge, on a motion for a new trial, to give grave consideration to the question whether his testimony at the trial was worthy of credit. But it cannot be said that as matter of law the judge was required to grant a new trial. A judge is not bound to believe an affidavit. *Commonwealth* v. *Sacco*, 255 Mass. 369, 449; 259 Mass. 128. *Thomajanian* v. *Odabshian*, 272 Mass. 19, 22. Justice would not be served by a rule of law that a verdict must go for naught whenever a necessary witness can be induced, or for some reason decides, to repudiate his sworn testimony.

*Judgment on the verdict.*