COMMONWEALTH *vs.* DONALD J. ROBERTSON
(and three companion cases).

Suffolk.    April 6, 1970. — June 4, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Jury and Jurors. Practice, Criminal,* Examination of jurors, New trial.
*Evidence,* Of clothing, Of bloodstains, Descriptive words.

At the trial of indictments for murders in the first degree, there was no
error in the judge's excusing two prospective jurors whose responses
to his specific inquiries following his general instructions indicated
that they would be unable to find the defendant guilty regardless of
the evidence because of their views against capital punishment. [561]
Disposition of a motion for a new trial in a criminal case based upon a
recantation by a material witness of the testimony which he gave at
the trial rested in the discretion of the trial judge, and there was no
error in the denial of such a motion where there was sufficient evidence
to convict the defendant without the alleged perjured testimony.
[562–563]
At the trial of indictments for the murders of two women in an apartment
by "striking, kicking and stomping," there was no error, after a
witness had testified that the defendant had been wearing green pants,
in permitting the witness to testify without objection that green pants
admitted as an exhibit were the pants worn by the defendant [563];
nor was there error in the admission of testimony by an expert that
certain stains on the pants were bloodstains, although the origin of
the blood could not be established [563]; nor was there error in the
admission of witnesses' descriptions of noises heard in the apart-
ment [563].

INDICTMENTS found and returned in the Superior Court
on September 8, 1966, and September 22, 1966.

The cases were tried before *Rose,* J.

*Henry E. Quarles, Sr.,* & *Edward A. Shapiro* for the de-
fendant.

*Lawrence L. Cameron,* Assistant District Attorney (*Alvan
Brody* with him) for the Commonwealth.

REARDON, J.    The defendant was tried under the pro-
visions of G. L. c. 278, §§ 33A–33G, on six indictments, two
of which charged him with murder in the first degree, two

with rape, and two with robbery. The jury found him guilty of murder in the first degree and robbery and he was sentenced to death on the indictments charging murder. He was acquitted of rape. A motion to set aside the verdicts or grant a new trial, which among other grounds cited "newly discovered evidence," was denied after hearing. The defendant again filed motions for a new trial and leave to inspect certain grand jury minutes. These motions were denied after hearings in which the grand jury minutes were produced. The case is before us on an assignment of errors.

On the morning of September 2, 1966, the bodies of Mollie Jacobs and her mother, Minnie Sperling, were discovered on the floor of a hallway inside an apartment where they lived on the second floor of a building in Dorchester. At the time of their deaths the daughter was seventy-five years old and the mother was ninety-five years old. The defendant was arrested on the same day and indicted within a week. Death to the elderly women had occurred by brutal assault, including "striking, kicking and stomping" to the extent that every rib in each of the deceaseds' bodies was broken. They had also been robbed. Witnesses at the trial, including particularly one Roger Peace, gave evidence that the defendant had entered the building and had been in the apartment where the bodies were found, and that concurrently noises originated there which sounded like women screaming. Peace testified that a short while after the defendant left the apartment he told him that he had killed the two women in order to procure money. The testimony given by Peace on the defendant's presence in the building was supported by other witnesses who testified that they saw Peace and the defendant enter and leave the building.

1. The defendant first assigned as error the exclusion from the jury of persons who tended to be opposed to the death sentence. He contends that his rights under the Sixth and Fourteenth Amendments to the United States Constitution were thereby violated. *Witherspoon* v. *Illinois*, 391 U. S. 510. There is no validity in the defendant's contention.

Prior to empanelling the jury the judge gave them instructions referred to with approval in *Commonwealth* v. *Nassar,* 354 Mass. 249, 255, footnote 4. The judge, in questioning prospective individual jurors, inquired of each, "Have you any opinion that would prevent or preclude you from recommending that the sentence of death be not imposed if the defendant is found guilty of murder in the first degree?" The action of the judge constituted a wise exercise of discretion. *Commonwealth* v. *Ladetto,* 349 Mass. 237, 245. *Commonwealth* v. *Nassar,* 354 Mass. 249, 254. See *Ladetto* v. *Commonwealth,* 356 Mass. 541, 546. The transcript of evidence makes it quite clear that relative to the two prospective jurors excused by the judge they would be unable to find the defendant guilty regardless of the evidence because of their views on capital punishment. The first such juror indicated that he was "afraid"; that he did not "like . . . the death sentence." The judge asked him, "Referring to the death sentence, are your feelings against capital punishment so strong that you couldn't find a defendant guilty of murder in the first degree, even though you were convinced of his guilt beyond a reasonable doubt, and where the death sentence would be imposed . . . [are] [y]our feelings . . . so strong that . . . [they] would interfere?" To this the juror answered, "I am against it, sir."

The second juror stated that he did not believe "in punishment by death." He was opposed to capital punishment, and in responding to the final question, "Is your opposition to capital punishment of such a nature that if the evidence against a defendant would warrant a finding of guilty you would find yourself compelled to find him not guilty because of that?" his answer was, "I believe so." We see no error in excusing these jurors in the light of the judge's general instructions and his specific inquiries of each of them.

2. The defendant argues error in the denial of each of his motions for a new trial. This assignment is based upon the recantation by Peace of testimony which he gave at the trial on his movements and those of the defendant, and also

concerning the defendant's admission to him that he had killed two women for money. Peace took the stand at the hearing on the motion which cited "newly discovered evidence" and stated that he had been coerced by the police into giving his testimony at the trial. Upon a motion for a new trial based on recantation by a material witness, the duty of the trial judge is to give grave consideration to the credibility of the witness's new testimony. However, it cannot be said as a matter of law that the judge is required to grant a new trial simply on the basis of recantation, and the motion is addressed to his sound judicial discretion. *Commonwealth* v. *Gwizdoski*, 284 Mass. 578, 581. "The disposition of motions for new trial on the ground of newly discovered evidence rests in the sound judicial discretion of the trial judge." *Commonwealth* v. *Chin Kee*, 283 Mass. 248, 256–257. *Commonwealth* v. *Wallace*, 304 Mass. 680. Furthermore, the "governing rules of law as to motions for a new trial in capital cases are the same as in civil and in other criminal cases." *Commonwealth* v. *Devereaux*, 257 Mass. 391, 395. The possibility that the recantation or newly discovered evidence might affect the result of the trial does not necessarily require the granting of a new trial. *DeLuca* v. *Boston Elev. Ry.* 312 Mass. 495, 500. Certainly the trial judge is in a far better position to pass upon the merits of that evidence which is labeled "newly discovered" than are we. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 32–33. Finally, the "fundamental test in determining the correctness of the action of a trial judge in denying a motion for a new trial on the ground of newly discovered evidence is that the decision of the judge is not to be reversed unless a survey of the whole case shows that his decision, unless reversed, will result in manifest injustice." *Sharpe, petitioner,* 322 Mass. 441, 445. "If the rule were otherwise, the right of a new trial would depend on the vagaries and vacillations of witnesses rather than upon a soundly exercised discretion of the trial court." *State* v. *Wynn*, 178 Wash. 287, 289. *People* v. *Shilitano*, 218 N. Y. 161, 180–181 (Cardozo, J. concurring). It appears that were the recantation of Peace to be ac-

cepted as true there is sufficient other evidence to uphold the convictions. Two witnesses testified at the trial that they saw Peace and the defendant leave the premises which were the scene of the murders. This Peace himself stated at the trial. In his recantation he made the claim that he had lied at the trial. Without the testimony of Peace there was sufficient evidence before the jury to convict the defendant and we find no error in the action of the judge on the motions. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 33. *Commonwealth* v. *Rutledge,* 356 Mass. 499, 502–503.

3. The defendant also assigns as error the admission in evidence of certain testimony which will be treated seriatim.

(a) One Clara Crawford was permitted to testify without objection that a pair of green pants, an exhibit at the trial, was that worn by the defendant on September 1, 1966. She had first testified that the defendant was wearing a black shirt and green pants and then identified them. There was no error. See *Commonwealth* v. *O'Toole,* 326 Mass. 35, 39.

(b) The defendant objected to the testimony of one Arthur McBay, an expert, to the effect that certain stains on the defendant's pants were bloodstains. While the origin of the blood could not be established it had not been suggested that it was not human blood nor was it contended that it was not. McBay's testimony was relevant to the testimony given of the defendant's departure from premises where two women had been beaten to death.

(c) The testimony of one Barbara Bell that she passed by the door of the apartment occupied by the two women on the afternoon of September 1, 1966, and heard noises like people wrestling and people falling on the floor, and that of Peace that he also heard noises "like someone maybe covering their mouth — like strangle" was properly admitted. "It has long been held that summary descriptions of things, if based on the sensory reactions of men in general and not requiring special learning or experiment, may be admissible as statements of observed facts." *Commonwealth* v. *Tracy,* 349 Mass. 87, 95–96. See *Commonwealth* v. *Sturtivant,* 117 Mass. 122, 133, 137. In short, there is no merit to the de-

fendant's exceptions to the admission of these or other items of evidence to which exception was taken at the trial.

4. Upon consideration of the case in accordance with our duty under G. L. c. 278, § 33E, it is our conviction that the verdicts of the jury were eminently just.

*Judgments affirmed.*