Brassard, J.
The defendant was convicted of murder in the first degree following a jury trial. At a subsequent trial for the same crime, involving a different defendant, a material witness for the Commonwealth admitted that she had committed perjury during the defendant’s trial. The defendant has now filed a motion for new trial pursuant to Mass.R.Crim.P. 30(b). For the following reasons, the defendant’s motion is DENIED.
Background
The Brum brothers, John and David, were indicted for and convicted of murder in the first degree following separate jury trials at the Taunton Superior Court. At the probable cause hearing, and at both of the trials, a material witness for the Commonwealth was Sheny Schlee Richard. Ms. Richard provided important testimony as to admissions made to her by the brothers and as to the mental state of the brothers shortly after the homicide. Ms. Richard was the girlfriend of Mark Brum, a brother of the defendants. At the probable cause hearing and at the trial of John Brum, the first trial, Ms. Richard testified that she had no knowledge of the alleged drug activities of her boyfriend, Mark Brum, and that she did not observe either of the defendants ingest any controlled substances during the course of the afternoon and evening following the homicide, Friday, June 13. At the trial of David Brum, the second trial, however, Ms. Richard changed her testimony. At the second trial she stated that she was aware that Mark Brum was a drug dealer and was involved in narcotics trafficking. She also admitted that she was aware that her boyfriend and the two defendants used heroin on the evening of Friday, June 13. Ms. Richard admitted that she had lied in her prior testimony. The court notes that the only testimony given by Ms. Richard regarding the activities of the defendants on Saturday, June 14, in either trial, was to the effect that John and David Brum worked with their brother, Joey Brum, hanging sheetrock at a construction project across the street from her apartment.
The defense offered by John Brum was one of diminished capacity based upon abuse which he suffered during his childhood, the effects of his-father’s violent death, and his own voluntary drug use. Several experts testified on behalf of the defendant about the impact that those events had had upon his life and how, as a result, he did not have the ability to form the specific intent necessary to commit the crimes with which he had been charged. As a part of this defense, the defendant argued that certain statements made by him to the police in the early hours of Sunday, June 15, were involuntary due to his use of heroin.
Discussion
The defendant’s motion for a new trial is based solely on the admitted perjury of a key prosecution witness. The defendant contends that the most recent testimony of the witness is newly discovered evidence. In evaluating this motion, the court'must consider whether or not justice has been done in light of any newly discovered evidence. See Commonwealth v. Waters, 410 Mass. 224, 229-31 (1991). “To grant a new trial on the ground of newly discovered evidence, a judge must find that the evidence is material. The evidence must be so grave, material and relevant as to afford a probability that it would be a real factor with the jury in reaching a decision.” Commonwealth v. Ortiz, 393 Mass. 523, 537 (1984) (citations omitted).
While the possibility that a material witness’ recantation might affect the result of the trial does not necessarily require the granting of a new trial, “the duty of the trial judge is to give grave consideration to the credibility of the witness’s new testimony and the motion is addressed to the trial judge’s sound discretion.” Commonwealth v. Ortiz, 393 Mass. 523, 536 (1984) (citations omitted); Commonwealth v. Robertson, 357 Mass. 559, 562 (1970); Commonwealth v. Bowie, 25 Mass.App.Ct. 70, n.6 (1987). Indeed, a change in testimony may not warrant the drastic remedy of a new trial unless the trial judge determines that there is a probability that the evidence would have been a real factor in the jury’s ultimate decision. Waters, 410 Mass. at 226. In making that determination, the judge considers the credibility, potency, and pertinence of the changed testimony to the fundamental issues in the case. Id.
The fundamental issues at trial revolved around the diminished capacity defense of the defendant and whether the defendant was responsible for his actions, or was capable of forming the necessary intent to commit the crime. In evaluating whether the new *103 testimony of a material witness warrants the award of a new trial to the defendant, the court must first determine whether the new testimony or evidence is credible. Robertson, 357 Mass. at 562. In this case, Ms. Richard has admitted, under oath, that she lied about her knowledge of her boyfriend’s drug activities. The court finds that her new testimony is credible.
As a result of that finding, the court must then determine whether there is a probability that the new evidence would have had a significant impact on the ultimate decision of the jury. Waters, 410 Mass. at 226. The issue of whether or not the defendant’s brother was engaged in the sale of illegal narcotics is certainly, in this case, collateral to the guilt or innocence of John Brum. His brother was not implicated in the crime in any material fashion and was merely a witness to the behavior of John and David Brum some time after the fact. Knowledge of Mark Brum’s drug activities would not have affected the juiy’s findings.
There remains, however, the issue of whether or not Ms. Richard’s changed testimony regarding the defendant’s drug use during the evening of Friday, June 13, would have had an impact upon the juiy’s verdict. The defendant contends that the changed testimony may have affected the juiy’s decision both as to the voluntariness of certain statements and as to the defendant’s capacity to form the requisite specific intent.
The juiy, as the trier of fact, were required to ascertain whether or not certain statements made by the defendant to the police officers investigating the homicide were voluntary. The statements at issue were made by the defendant in the early morning hours of Sunday, June 15. The court has reviewed the testimony given by Ms. Richard in both trials. Neither the testimony given by Ms. Richard in the first trial nor her revised testimony at the second trial constitutes material evidence that the defendant, John Brum, was under the influence of drugs or alcohol at the time that his statements were made to the police. Ms. Richard’s changed testimony does not materially further the defendant’s position that statements made by him to the police were involuntary. At the second trial she did not provide the trier of fact with any direct or compelling evidence that the defendant was under the influence of drugs at the time he was questioned at the police station. Indeed, she did not testify to having observed any drug use by the defendant at all on Saturday, June 14. The drug use which Ms. Richard did indicate had taken place, when she testified at David Brum’s trial, occurred on the evening of Friday, June 13, a full day prior to the time when the defendant made his statements to the police. Accordingly, even if Ms. Richard had testified truthfully at the defendant’s trial, this evidence is not likely to have been a real factor in the juiy’s decision or to have significantly altered the outcome of the trial.
In any event, the juiy was presented with ample evidence of the defendant’s drug use to have fully considered any possible impact on the voluntariness of the defendant’s statements. By the defendant’s own admission to the police, he used a portion of the money taken from the victim to purchase heroin and beer. He also told the defense psychiatrist that, in addition to using the money taken from the victim to buy drugs, he had been ingesting heroin constantly, including during the period of time preceding the death of the victim. Furthermore, the psychiatrists for both the prosecution and the defense testified that the defendant was a chronic drug abuser and suffered from severe heroin dependence. Finally, several police officers who had been involved with the homicide investigation testified at trial that the defendant did not appear to be under the influence of drugs during the evening and early morning hours of June 14 and 15.
In light of the presentation of this evidence at the defendant’s trial, truthful testimony on the part of Ms. Richard would have done little more than corroborate what was already known to the juiy: that the defendant was known to be a drug abuser and that he had probably used heroin on the evening following the death of the victim.
The defendant also argues that, had Ms. Richard testified truthfully at his trial, that the juiy could have found that he did not possess the requisite specific intent necessary to commit the offenses with which he had been charged. The defendant’s own statements to the police, however, were to the effect that at the time of the crime he was not under the influence of drugs or alcohol. Indeed, it was the defendant’s assertion that he was “strung out,” that is, craving heroin. The defendant’s stepfather, who spoke with the defendant shortly after the time of the homicide, testified that the defendant did not appear to be under the influence of either alcohol or drugs. The testimony of Ms. Richard would have added little to the position that the defendant was under the influence of drugs or alcohol and therefore lacked the ability to form the necessary specific intent for the crime. Ms. Richard’s revised testimony was only to the effect that the defendant used heroin on the evening following the homicide. She did not state that the defendant appeared to be under the influence of a controlled substance when he first arrived at her apartment on June 13. Further, her testimony depicts an individual who was coherent and capable of carrying out a plan to conceal evidence.
Consequently, the revised testimony given by Ms. Richard at the second trial could not have materially affected the ultimate decision of the juiy.
The defendant argues that the testimony given by Ms. Richard at the trial of David Brum is newly discovered evidence which warrants the granting of a new trial. The Commonwealth’s interest in the finality of a verdict can be overcome by newly discovered evidence which is material, casts doubt upon the *104 validity of the conviction, is not merely cumulative of other evidence admitted at trial, and could not reasonably have been discovered during the course of the trial. Commonwealth v. Grace, 397 Mass. 303, 306 (1986). Moreover, “newly discovered evidence that tends merely to impeach the credibility of a witness will not ordinarily be the basis of a new trial.” Commonwealth v. Siciliano, 19 Mass.App.Ct. 918, 919 (1984), quoting Commonwealth v. Toney, 385 Mass. 575, 581 (1982). In this case, the testimony of Ms. Richard is not newly discovered as it could have been presented at the defendant’s trial.
At the hearing on the defendants’ motions to suppress, conducted by this court, one of the defendant’s brothers, Mark Brum, testified as to drug usage by the defendant on Friday, June 13. Mark Brum also testified to the same effect at the trial of David Brum. Mark Brum was available and could have been called as a witness by John Brum. Evidence of drug use by John Brum was not newly discovered after the revised testimony of Ms. Richard.
ORDER
For the foregoing reasons, the court ORDERS that the defendant’s motion for new trial pursuant to Mass. R. Crim. P. 30(b) be DENIED.