COMMONWEALTH *vs.* ANDREW J. HAMMOND, THIRD.

No. 97-P-1138.

Middlesex. March 9, 2000. - October 5, 2000.

Present: KASS, GILLERMAN, & JACOBS, JJ.

*Malicious Explosion. Throwing an Explosive Device. Statute,* Construction. *Practice, Criminal,* Duplicative convictions, Instructions to jury, New trial. *Words,* "Injure."

This court concluded that convictions of causing damage to property or injury to a person by malicious explosion, G. L. c. 266, § 101, and throwing an explosive device with intent to damage property or injure a person, G. L. c. 266, § 102, arising out of the same incident, were not duplicative. [173-175]

At the trial of indictments under G. L. c. 266, §§ 101 and 102, the judge did not err in responding to a question by the jury by defining "injury" to the victim, an element of the crimes, as "significant emotional injury" as well as physical injury. [175-176]

At a hearing on a motion for a new trial based in part on a witness's recanting of his trial testimony, the judge did not err in receiving the witness's recanting affidavit, made without benefit of counsel, conditionally in order to allow the witness to invoke his privilege against self-incrimination: the witness did not waive his privilege by signing the affidavit. [177]

There was no error in a judge's findings and rulings on a criminal defendant's motion for a new trial and there was no abuse of discretion in his denial of the motion. [177-179]

INDICTMENTS found and returned in the Superior Court Department on June 28, 1996.

The cases were tried before *Hiller B. Zobel,* J., and a motion for new trial, filed on November 18, 1997, was heard by him.

*Michael R. Schneider (Alan M. Dershowitz* with him) for the defendant.

*Marguerite T. Grant,* Assistant District Attorney, for the Commonwealth.

KASS, J. At about 7:40 P.M. on April 26, 1994, a quarter-stick of dynamite taped to a rock crashed through the living room

window of the residence at 15 Winter Road, Woburn. The device exploded in the hand of Jennifer Galante, injuring her severely. There was collateral damage to the house.

Andrew J. Hammond, III, the defendant, was convicted by a jury as an accessory before the fact to the crimes of (1) causing damage to property or injury to a person by malicious explosion (G. L. c. 266, § 101); and (2) throwing an explosive device with intent to damage property or injure a person (G. L. c. 266, § 102).[1] He was acquitted of a charge of mayhem.

On appeal from the judgment, Hammond claims that the convictions of malicious explosion and throwing an explosive device are duplicative, thus subjecting him to double jeopardy, and that the judge erred in instructing the jury that "injures," as the word is used in G. L. c. 266, §§ 101 and 102, means significant emotional injury as well as physical injury. There is also an appeal from the denial of a motion for a new trial based on newly discovered evidence.

1. *Facts.* We state the facts the jury could have found, viewing the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). Hammond's quarrel with Jennifer Galante was that she was telling her best friend, Jennifer Gibbons, that Hammond was bad news. Gibbons was the object of Hammond's affection and they were going together. Such was Hammond's displeasure with Galante that he had on two occasions, over the telephone, threatened to kill her.

The dynamite idea had sprouted some days before the April 26 explosion, while Hammond was hanging out with friends at a spot in Billerica that they favored. One of them, Leonard Pearlstein, had come equipped with a stash of quarter-sticks of dynamite, sometimes called M-80s. He took a stick out, put it in a milk carton, and lit the fuse, and the four young men watched it explode. Hammond observed, "[I]t could do a lot of harm." He paid Pearlstein five dollars for a quarter-stick. Pearlstein and Hammond taped the quarter-stick to a rock. On the tape was a hand written message saying, "Don't fuck with me [word missing] cunt." Hammond gave Pearlstein Jennifer Galante's address and directions to it. He said he wanted to scare her.

Some days later, i.e., on April 26, 1994, there was first a

---

[1] Hammond was also found guilty under § 102 of possession of an explosive device with intent to damage or destroy property and to injure a person.

gathering at Pearlstein's house, at which Hammond and two others in their circle, Jeff McMillan and Marc Perry, were present. A Mark Hamilton was also present. He asked to be taken home. Hammond, McMillan, Pearlstein, and Perry regrouped at Boomer's, a pool hall in Wilmington at which Hammond sometimes played. Perry stayed in the car in which he had arrived, a stolen BMW, while Hammond, Pearlstein, and McMillan talked for some minutes. After that conversation was over, McMillan and Pearlstein rejoined Perry, McMillan announcing, "We are going for a ride in the car." Pearlstein directed Perry to the Galante house. When they arrived, McMillan got out and returned in about forty seconds shouting: "go, go, go." As Perry sped away, he heard a "big boom," followed by screams. The three returned to Boomer's, where Hammond was in the parking lot. Hammond asked, "[W]as it done?" Pearlstein said, "It was done." The two slapped high five.[2]

At the blast site, as noted, Jennifer Galante, then seventeen years old, was grievously injured in the hand and suffered shrapnel wounds over her body. Her mother also had been in the living room and her sister and grandparents were at home. There was considerable property damage.

2. *Whether convictions under G. L. c. 266, §§ 101 and 102 are duplicative.* For convenience, we shall generally refer to the count under G. L. c. 266, § 101, as the malicious explosion indictment and the count under § 102 as the throwing indictment. Hammond argues that the elements of § 102 are subsumed in § 101, and that his convictions of both are duplicative and, therefore, violate his right to be free from double jeopardy. See *Commonwealth* v. *Arriaga,* 44 Mass. App. Ct. 382, 384-385 (1998). The defense did not raise that issue at trial but we consider it on the authority of *Commonwealth* v. *Sanchez,* 405 Mass. 369, 382 (1989). See *Commonwealth* v. *Gagnon,* 37 Mass. App. Ct. 626, 633 (1994).

Section 101, the statutory basis of the malicious explosion indictment, reads:

"Whoever wilfully, intentionally and without right, by the explosion of gunpowder or of any other explosive, unlaw-

---

[2]Giving someone "five" is a celebratory or congratulatory ritual, often used in sports, in which two people slap the palms of one of their hands together. When done "up high," as here, the slappers connect their palms with raised arms. That is a "high five."

fully damages or destroys property or injures a person, shall be punished . . . ."

Section 102, the statutory basis of the throwing indictment, reads:

> "Whoever wilfully and intentionally throws at or near any person and whoever wilfully, intentionally and without right throws into, against or upon, any property real or personal, or puts, places or explodes or causes to be exploded in, upon or near such property, or near any person, gunpowder or other explosive . . . with an intent unlawfully to destroy or damage property or injure any person, or whoever has in his possession or under his control such an article or instrument with said intent, shall be punished . . . ."

To convict a defendant of two statutory offenses arising out of a single incident, "each crime requires proof of an additional fact that the other does not." *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981). *Commonwealth* v. *Crocker*, 384 Mass. 353, 358 (1981). *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. at 386.

Section 101, the malicious explosion statute, describes causing an unlawful explosion that occurs and damages or destroys property or injures a person. It is a completed act. The offense described by § 102, the throwing statute, may not be a completed act. It is possible to offend against the statute by throwing an explosive device at or near a person or throwing it into property, without having the device explode; or, the device may explode and cause no damage or injury. If the thrown device explodes, § 102 is nonetheless violated; i.e., § 102 is more than an attempt crime. See *Commonwealth* v. *Poor*, 18 Mass. App. Ct. 490, 492-493 (1984). Although an explosion may occur in each statute, the throwing offense involves the additional fact or element of throwing, which the malicious explosion statute does not. There is — at least the Legislature could so conclude — a special element of terror in hurling an explosive at a person or into a property. It is quite possible to cause an explosion without throwing the

explosive.[3] The act of the defendant, therefore, offended against two statutes, even though it arose out of one incident. *Commonwealth* v. *Crocker*, 384 Mass. at 358. *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. at 389. *Commonwealth* v. *Smith*, 44 Mass. App. Ct. 394, 396 (1998). Contrast *Commonwealth* v. *DeCicco*, 44 Mass. App. Ct. 111, 125-126 (1998) (throwing explosive device in violation of G. L. c. 266, § 102, subsumes the lesser offense stated in G. L. c. 266, § 102A, of possession of an infernal machine).

3. *Instruction to jury about meaning of "injure."* Historically, the antecedents of G. L. c. 266, §§ 101 and 102, defined crimes against property.[4] Concern with injury to persons was added by St. 1957, c. 688, §§ 21 and 22. As the judge instructed the jury on the elements of the crimes charged, a juror interjected the question: "Your Honor, does injury include mental anguish as well as physical injury?" After discussion with counsel, the judge said to the jury: "I will define injury as meaning any direct adverse effect on a person. It has to be something more than trivial, but it has to be a direct adverse significant effect." After the jury had deliberated for some time, the foreman sent to the judge the following written question: "Injury, can there be a more detailed definition? Does it include emotional or mental injury/trauma?" After hearing further from counsel, the judge, over defense objection, instructed the jury in writing: " 'Injury' includes significant emotional injury." The position of the defense is that the statutory phrase, "injures a person" — it appears in both § 101 and § 102 — signifies physical injury and that the jury were wrongly instructed.

In its classical meaning, the primary meaning of "injure" was to do injustice or wrong to a person as in, "When have I

[3]The jury, in response to special questions, found the defendant not guilty of placing the explosive. We need not confront the logical conundrum posed by the defense, that one cannot cause an explosion without at least *placing* an explosive, because the jury found the defendant guilty of throwing the explosive.

[4]The lineage of the statutes goes back to St. 1851, c. 129, §§ 1 and 2. Section 1 dealt with damage by explosive substance to a dwelling house, office, shop, other building, or vessel. Section 2 pertains to throwing an explosive with intent unlawfully to destroy or injure a dwelling house, office, shop, building or vessel. The 1851 statute concludes with a proscription against throwing oil of vitriol, coal tar or any other noxious or filthy substance against a dwelling house, office, shop, etc.

injured thee? when done thee wrong?"[5] To insult, revile, or slander is to injure. Oxford English Dictionary 1439 (Compact ed. 1971). More recent American definition places physical harm at the fore. The American Heritage Dictionary 929 (3d ed. 1992). In current usage, "injure" has wide range and the question is whether, consonant with the principle that plausible ambiguities in a criminal statute should be resolved in favor of a defendant, *Commonwealth* v. *Wotan*, 422 Mass. 740, 742 (1996),[6] are we required to read the modifier "physically" or "bodily" as appurtenant in the statutes to the word "injure"?

We think not. Had the Legislature desired that limitation, it could have expressed it, as it has done on many occasions. See, e.g., G. L. c. 148, § 55 (explosive golf ball "tending . . . to inflict bodily injury"); G. L. c. 265, § 13J (assault and battery on a child causing bodily injury); G. L. c. 265, § 13K (assault and battery upon an elder or person with a disability causing bodily injury); G. L. c. 265, § 14 ("serious or permanent physical injury"); G. L. c. 265, § 22 (rape caused by threat of bodily injury or resulting in serious bodily injury); G. L. c. 265, § 26 (inflicting serious bodily injury in connection with a kidnapping); G. L. c. 265, § 39 (battery for purposes of intimidation which results in bodily injury). Compare G. L. c. 271, § 39 (threat of "economic injury"). Unmodified as it appears in §§ 101 and 102, we think the word "injure" accommodates harm to the mind that a person of normal sensibility would experience when made the victim of an explosion. The very purpose of such an explosion is to terrorize, as in the instant case. Against that standard, we decide that the judge did not mislead the jury in instructing them that injury includes significant emotional injury.[7]

Having said that, we may add that the content given to the statutory phrase "injures a person" was not of ultimate consequence. The jury, by response to special questions, also found the defendant guilty of damaging or destroying property

---

[5]Shakespeare, Richard III, act 1, sc. 3.

[6]See also *McBoyle* v. *United States*, 283 U.S. 25, 27 (1931); *Commonwealth* v. *Gagnon*, 387 Mass. 567, 569, *S.C.*, 387 Mass. 768 (1982), cert. denied, 461 U.S. 921, and cert. denied, 464 U.S. 815 (1983).

[7]*Commonwealth* v. *Gorassi*, 432 Mass. 244, 248-249 (2000), is not to the contrary. That case held it was error to instruct a jury that the common-law offense of assault could be made out by a threat of psychological harm. It is of the essence of common-law assault that there be an attempt at physical force or action which places the target in fear of imminent bodily harm. *Ibid.*

under both the malicious explosion indictment and the throwing indictment. Those guilty findings support the sentence that the judge imposed.[8]

4. *The new trial motion.* Newly discovered evidence was the basis for Hammond's motion for a new trial. That evidence consisted of (a) an affidavit by Darrin Turner, who had given testimony damaging to Hammond at trial; and (b) an affidavit by Jeffrey McMillan, who had heaved the explosive device, was in State prison, and had not been called as a witness at trial.

(a) *The Turner affidavit.* Turner's affidavit, made about ten months after the end of the trial, was a recantation of certain of his trial testimony damaging to Hammond. It was a difficulty of the recantation that it exposed Turner to the risk of prosecution for perjury. He did not have the benefit of his own counsel when he made the affidavit. The judge received the Turner affidavit conditionally at the hearing on the motion for a new trial. The judge allowed Turner to invoke his right not to give further testimony on the ground that it might incriminate him. The defense claims that Turner waived his privilege against self-incrimination when he gave the affidavit. Unlike the case in *Luna* v. *Superior Ct.*, 407 Mass. 747, 750, cert. denied, 498 U.S. 939 (1990), the affiant, Turner, did not, as noted, meet with counsel before signing the affidavit. In those circumstances, the judge did not err in allowing Turner to invoke the privilege. See *Commonwealth* v. *Borans*, 388 Mass. 453, 457 (1983), and cases cited.

As to the force of the affidavit itself, a judge must take a recantation seriously, *Commonwealth* v. *Robertson*, 357 Mass. 559, 562 (1970), but may weigh its credibility and force. *Ibid.* Certainly the motion judge, if, as here, he was also the trial judge, may factor into the weighing what the judge learned about the case and the witness/affiant at trial. *Commonwealth* v. *Ortiz*, 393 Mass. 523, 536-537 (1984).

(b) *Turner's posttrial reward.* At trial, Turner testified that the

---

[8]The judge imposed a sentence of eighteen to twenty years on the malicious explosion indictment and a consecutive sentence of twelve to fifteen years on the throwing indictment. In remarks at sentencing, the judge observed that the offenses were ones as to which the defendant would be eligible for parole after having served one-third of the minimum sentence. The judge thought Hammond ought to serve ten years before being eligible for parole. Hammond appealed the sentence to the Appellate Division of the Superior Court, which left the sentence imposed in place.

Commonwealth had made him no promises of rewards in exchange for his testimony. After Hammond's conviction, Turner received $2,500 from a State Fire Marshal reward program for information leading to the conviction of those involved with the explosion. In support of the motion for a new trial, the defense argues that the prosecution impermissibly withheld information about that payment. Of course the prosecution must disclose to a defendant information "in its possession that could materially aid the defense against the pending charges." *Commonwealth* v. *Tucceri*, 412 Mass. 401, 404-405 (1992). See *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963). In connection with the motion for a new trial, there was extensive testimony heard by the judge from the State trooper from the Fire Marshal's office, Mark Horgan, and the Woburn police detective, Michael Pandolph, both of whom interviewed Turner during the investigation of the explosion of April 26, 1994. No evidence developed that they made any promises of reward to Turner. Nor does Turner's own affidavit mention a reward for the testimony that he states in the affidavit was false. The judge acted within his discretion in finding that no promise of reward had in fact been made to Turner.

(c) *The McMillan affidavit.* McMillan's affidavit, the judge found, failed as newly discovered evidence. The defense had not called McMillan at trial, yet his whereabouts were not a mystery. See *Commonwealth* v. *LeFave*, 430 Mass. 169, 177 (1999). McMillan had entered a plea of guilty to mayhem, malicious explosion and throwing an explosive device. As of the date of the affidavit, he was serving a prison term of twelve to twenty years, eleven to serve, the balance suspended. Nevertheless, the judge considered the McMillan affidavit but did not credit it.[9]

It is a very uphill road for a party to establish that a judge acting on a motion for a new trial abused his discretion. Appellate courts give great deference to the judge's disposition of such a motion and rarely reverse. *Commonwealth* v. *Ortiz*, 393 Mass. at 537. *Commonwealth* v. *Markham*, 10 Mass. App. Ct. 651, 651-652 (1980). On review of the record, we decide that

[9]McMillan made an affidavit to the effect that throwing the quarter-stick was Pearlstein's, not Hammond's, idea, and that it was not true that Hammond rejoiced on hearing news of the bombing.

the trial judge dealt with the motion for a new trial conscientiously and acted within his discretion.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*